UNITED STATES of America ex rel.
Tyrone HALL, Petitioner-Appellant,

v.

DIRECTOR, DEPARTMENT OF COR-
RECTIONS OF the STATE OF ILLI-
NOIS, Respondent-Appellee.

No. 77–2284.

United States Court of Appeals,
Seventh Circuit.

Argued April 28, 1978.

Decided June 26, 1978.

Donald S. Honchell, Asst. Public Defend-
er of Cook County, Chicago, Ill., for peti-
tioner-appellant.

Gerri Papushkewych, Asst. Atty. Gen.,
Springfield, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, MIL-
LER, Judge,* and BAUER, Circuit Judge.

MILLER, Judge.

This appeal is from the district court's
dismissal of a petition for a writ of habeas
corpus, the petition being grounded on
Hall's contention that "his constitutional
right to avoid self-incrimination was violat-
ed when the [police] officer deliberately em-
ployed psychological coercion to secure a
confession from him." On the basis of the
confession, which he unsuccessfully sought
to suppress (for other reasons), Hall was
convicted of armed robbery in a bench trial
in the Circuit Court of Cook County, Illi-
nois. The denial of his motion to suppress
and his conviction were both upheld on ap-
peal to the Illinois Appellate Court. *People
v. Houston*, 36 Ill.App.3d 695, 344 N.E.2d

---

* The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent
Appeals, sitting by designation.

641 (1976). The Illinois Supreme Court (*sub nom. People v. Houston*, 63 Ill.2d 560 (1976)) denied leave to appeal, and the United States Supreme Court (*sub nom. Gibson v. Illinois*, 429 U.S. 1109, 97 S.Ct. 1143, 51 L.Ed.2d 562 (1977)) denied certiorari.

Hall was arrested in Chicago by La-Grange police officers Clark and Konzak early on the morning of August 28, 1972, and was taken to a local Chicago police station. En route to the station, he was advised of his rights by Konzak. He declined to waive his rights or to make a statement, although he asserted that he had no knowledge of the armed robbery, which took place at the LaGrange News Agency. Upon arrival at the police station, he was taken to an interview room, again advised of his rights, and questioned by Konzak. He again denied any knowledge of the armed robbery. In the afternoon, he was transported to the LaGrange police station. There was no interrogation en route or at the station upon his arrival. However, on the following morning, Konzak removed Hall from his cell in preparation for his scheduled court appearance for a bond hearing and requestioned him about the armed robbery. At the trial, Konzak testified concerning this requestioning. He admitted that he misled Hall by telling him (1) that his two accomplices (Houston and Gibson) had stated that Hall was "one of the originators of the idea [of the robbery]"; and (2) that Houston had put a large part of the blame for the robbery on Hall. However, Konzak stated that these misleading statements were only a part of the conversation with Hall leading to Hall's oral and written confession, and that he factually told Hall that Houston and Gibson had implicated him in the robbery and that Houston had given him (Konzak) a written statement. The Illinois Appellate Court specifically noted that Hall had not been subjected to physical abuse, threats, or promises.

Counsel for Hall contends that the district court underestimated the effects of the "psychological coercion" on Hall and erred in concluding that its effects were "minimal"; most importantly, that "actions of the officer, in misleading Hall, procured this confession through deliberate deceit and falsehood." He also argues that the treatment Hall received "was clearly designed to render him susceptible to the fraud by weakening, in its way, his will to resist and by encouraging a confession to lesser involvement when the fear and threat of greater punishment as the ringleader was made known to him by police." Thus, counsel opines: "It is not inconceivable one would confess out of fear to lessen the guilt and punishment otherwise likely to occur." He further argues that Hall's power of resistance "was gradually overcome by his confinement and he became primed for that one effective maneuver that begat the coerced confession." Of course, argument of counsel cannot take the place of the convincing evidence needed to overturn the decisions of the Circuit Court and the Illinois Appellate Court. *Thornton v. United States*, 493 F.2d 164, 167 (3d Cir. 1974). *See* 28 U.S.C. § 2254(d); *LaVallee v. Delle Rose*, 410 U.S. 690, 695, 93 S.Ct. 1203, 1205, 35 L.Ed.2d 637, 695 (1973).

■ The Government points out that, at his trial, Hall testified (obviously unpersuasively) that he confessed because the interrogating officer pointed a gun at him, cocked the trigger, and swore at him; and that he never mentioned having been given any misinformation. Citing *Howell v. United States*, 442 F.2d 265, 274 (7th Cir. 1971), Hall suggests that this court "attach no weight or significance to petitioner's failure to refer to the deception in his testimony." However, we note that in *Howell* this court denied the relief requested and said, *supra* at 273:

> While we desire fully to protect all constitutional rights of a criminal defendant, we do not look with any particular favor upon resort to a different and inconsistent ground, albeit constitutional, in post-conviction proceedings when a course consciously chosen during trial has proved unsuccessful.

We agree with Hall that his failure to mention, during his trial, that he had been

given misinformation "is not fatal to the conclusion it occurred." But the point is that such failure is persuasive that the misinformation that occurred did not, in fact, result in "psychological coercion" rendering his confession involuntary.

 Hall's counsel maintains that "the fraudulent deception by police was sufficient to produce the confession," and, at oral argument, contended that this deception was "the final straw that broke the camel's back"—*i.e.*, that broke appellant's will to resist. This, of course, ignores the fact that *all* of the straws, including the final one, contributed to the back-breaking. "A mere deception by an interrogator, *ipso facto*, does not invalidate a confession absent other compelling circumstances." *United States ex rel. Lathan v. Deegan*, 450 F.2d 181, 185 (2d Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972). Thus, in determining the voluntariness of a confession, the "totality of the circumstances" must be considered. *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 1342, 10 L.Ed.2d 513, 520 (1963); *Colombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1960); *United States v. Reynolds*, 532 F.2d 1150, 1159 (7th Cir. 1976). We note the statement of the Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973):

> The significant fact about all of these decisions [in earlier cases involving voluntariness of confessions] is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances.

Of particular relevance is *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1429, 22 L.Ed.2d 684, 690 (1969), where a confession had been preceded by an interrogating officer's falsely telling the defendant that an associate had confessed. Holding that the confession was voluntary considering the totality of the circumstances, the court said:

> The fact that the police misrepresented the statements that Rawls [defendant's associate] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.

 In view of the foregoing, we are not persuaded that the district court, which applied the "totality of the circumstances" test, erred in concluding that the effects on Hall of the misstatements by Konzak were "insignificant by comparison" with Hall's knowledge that his accomplices had confessed, and that they did not render Hall's confession involuntary. Moreover, the fact that the misstatements were deliberate rather than inadvertent does not compel a different conclusion, since in either event the effects upon a suspect would have been the same.

The judgment and order of the district court are affirmed.

AFFIRMED.