THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARK SANDERLIN, Defendant-Appellant.

Fourth District    No. 17442

Opinion filed April 15, 1982.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LONDRIGAN delivered the opinion of the court:

Defendant was charged with the offense of armed robbery. The charge arose from the armed robbery of the Burger Chef restaurant in Bloomington, Illinois, on March 14, 1981.

Prior to trial, defendant filed motions to quash his arrest and to suppress testimony regarding a pretrial identification. Defendant alleged that he had been arrested without probable cause and forced to appear in a lineup without counsel.

At the pretrial hearing, it was established that defendant was arrested by Macon County authorities on March 24, 1981, and charged with the armed robbery of a Decatur establishment. Defendant was held in the Macon County jail. Although a finding of probable cause was made at a

preliminary hearing, the armed robbery charge was dismissed on April 7, 1981. Defendant continued to be detained in Macon County because a parole hold had been issued against him.

On April 8, 1981, Bloomington police officer Richard Hoeniges was advised by Macon County authorities that defendant was in custody as a suspect in a Decatur robbery. The *modus operandi* of the Decatur robbery was similar to that of the Bloomington Burger Chef robbery.

Hoeniges relayed this information to William Ingram, a McLean County parole officer. Ingram instituted a parole hold on the defendant in McLean County. On April 9, 1981, Bloomington police officer John Swearingen traveled to Macon County, obtained custody of defendant and transported him to the McLean County jail. Officer Swearingen did not have a warrant for defendant's arrest. On April 10, 1981, defendant was placed in a lineup. James Palmer identified the defendant as the perpetrator of the Burger Chef armed robbery.

The trial court denied defendant's motion to quash his arrest and to suppress evidence.

At trial, the evidence established that at approximately 11 p.m. on March 14, 1981, a masked man entered the Burger Chef restaurant in Bloomington, Illinois. He produced a long-barreled pistol and ordered the employees to empty the safe. After taking the money, the intruder fled. Two restaurant employees gave descriptions of the man. Ms. Stearns described the man as being between 5 feet 10 inches and 6 feet tall, weighing 165 pounds, and wearing a ski mask, blue jeans and an army surplus jacket. Ms. Donaldson described the man as being 6 foot 1 inch tall, slim, and wearing a ski mask, blue jeans and a long green coat.

James Palmer testified that he left the Burger Chef restaurant at approximately 11 p.m. As he was leaving the restaurant, he saw a man wearing an army jacket and blue jeans. As this man reached the door of the restaurant, he pulled a ski mask down over his face. Palmer further stated that he observed the man's face for 5 to 10 seconds before the man pulled the ski mask down. Palmer described the man as being 6 feet 1 inches tall, slim, with dark hair and a mustache.

Palmer also testified that he viewed a lineup on April 10, 1981. Palmer stated that he identified defendant as the man who had committed the Burger Chef robbery.

Defendant presented alibi testimony by his cousin and another woman which indicated that defendant was in Decatur on the evening of March 14, 1981.

The jury found defendant guilty of armed robbery. Defendant was sentenced to a term of 8 years' imprisonment.

Defendant argues that his detention by the Bloomington police constituted an illegal arrest and that the identification testimony must be

suppressed as fruit of the illegal arrest. He argues that the McLean County parole hold was merely an attempt to subvert the constitutional requirement of probable cause.

Section 3—14—2(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—14—2(c)) provides, in part:

> "A sheriff or other peace officer may detain an alleged parole or release violator until a warrant for his return to the Department can be issued. The parolee or releasee may be delivered to any secure place until he can be transported to the Department."

The supreme court dealt with the question of whether an arrest of a parolee must be supported by probable cause in *People ex rel. Jefferson v. Brantley* (1969), 44 Ill. 2d 31, 253 N.E.2d 378. In *Brantley*, petitioner was a parolee who had been arrested by means of a warrant issued by the warden of the penitentiary and charged with a parole violation. Petitioner argued that the warrant was issued without probable cause and that his arrest was improper. The supreme court rejected this argument, stating:

> "The warrant for Jefferson's arrest was issued and certified to by the warden pursuant to section 7(g) of the Sentence and Parole Act (Ill. Rev. Stat. 1967, ch. 108, par. 204(g),) but was not supported by a complaint setting forth probable cause. The warrant initiated an administrative proceeding to determine whether parole had been violated, and in no way deprived a free citizen of his right to liberty. It therefore did not have to meet the 'probable cause' requirements of the fourth amendment." 44 Ill. 2d 31, 33-34, 253 N.E.2d 378.

Similar results have been reached by the courts of sister States. See, e.g., *People v. Prochnau* (1967), 251 Cal. App. 2d 22, 59 Cal. Rptr. 265 (detention of a parolee is not an arrest since the parolee is at all times *in custodia legis*); *Reeves v. Turner* (1972), 28 Utah 2d 310, 501 P.2d 1212 (standards governing arrest in search of parolee are not as stringent as those governing arrest in search of citizen with full civil rights).

The standard required to be met in order to detain a parolee in Illinois was recently discussed in *People v. Finch* (1980), 86 Ill. App. 3d 493, 408 N.E.2d 87. In *Finch*, detectives were investigating the murder of two service station attendants. Defendant, a parolee, had been seen in the station a short time before the bodies were found. Officers went to defendant's apartment. Defendant consented to a search of the premises. Defendant's girlfriend told one of the officers privately that defendant had a gun but that she had never seen it. Defendant later agreed to go up to the station and answer more questions.

Defendant gave a statement at the police station, describing his actions on that day. Police informed defendant's parole officer of what defendant's girlfriend had said about a gun and that defendant's story

"did not jive" with the facts. A parole hold was placed on defendant and he was held in custody. A few hours later, defendant confessed to the crime.

Defendant argued on appeal that his confession should be suppressed because his arrest was not based on probable cause. The Second District held that defendant's fourth amendment rights were not violated. It was arguable as to whether the detention was supported by probable cause to arrest the defendant. However, a detention for parole violation was proper because reliable information existed that defendant had violated his parole.

In the present case, defendant was arrested on March 24, 1981, for the February 12, 1981, armed robbery of Vilmure's Market in Decatur. Vilmure's was robbed by a white male in his 20's, 6 feet tall, 150-175 pounds, wearing a blue face mask and a blue or green hooded jacket or parka. The suspect was armed with a long-barreled pistol. The robbery occurred just before the closing time of the market. Probable cause was found to exist at a preliminary hearing. The Decatur charges were later dropped, but Decatur detectives were in contact with Bloomington detectives regarding the Burger Chef robbery. Defendant fit the description of the robber given by the Burger Chef employees and had a similar *modus operandi.*

■■ We find that sufficient grounds existed to detain defendant under section 3—14—2(c). Defendant fit the description of the Burger Chef robber and had a very similar *modus operandi.* Therefore, his detention for parole violation was proper because reliable information existed that defendant had violated his parole.

Even if defendant had been illegally detained, the in-court identification of the defendant by James Palmer would not have been suppressed. Palmer's identification of defendant was based upon an independent recollection of his initial encounter with defendant at the Burger Chef restaurant. See *United States v. Crews* (1980), 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244.

Defendant next argues that the trial court erred when it failed to suppress a pretrial identification made in violation of his sixth amendment right to counsel.

In *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, the supreme court held that the sixth amendment right to counsel does not attach prior to the time that adversary judicial proceedings are commenced. In *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, our supreme court relied on *Kirby* in holding that defendant's right to counsel had not attached since adversary judicial proceedings had not been initiated by the State at the time of lineup. Defendant was in custody, but had not yet been charged at the time of the lineup.

■■ Defendant argues that he had been formally charged with the

Decatur armed robbery and that the only reason he was taken to Bloomington was because of similarities in the commission of the two offenses. He argues that the formal charge in the Decatur armed robbery operated to bring his right to counsel into play in the Bloomington matter.

The First District dealt with the issue in *People v. Earl* (1979), 78 Ill. App. 3d 188, 397 N.E.2d 97. Defendant was arrested on an unlawful use of weapons charge. A preliminary hearing was held the next day. Two weeks later, while still in custody awaiting arraignment, defendant participated in a lineup related to investigation of an armed robbery. The victim identified him as one of the perpetrators of the armed robbery. Defendant was represented by counsel on the weapons charge, but counsel was not present at this lineup. Defendant was later convicted of armed robbery.

On appeal, defendant contended that his sixth amendment rights were violated. The First District rejected this claim. The court found that adversary criminal proceedings had not yet been initiated against defendant for the armed robbery at the time of the lineup. Therefore, the right to counsel for that crime had not yet attached.

In sum, defendant's sixth amendment right to counsel was not violated by the use of identification testimony resulting from the Bloomington lineup.

Defendant argues that the identification evidence was obtained in violation of defendant's rights under sections 103—3 and 103—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 103—3, 103—4). Section 103—3 gives the accused the right to communicate with his attorney and family members. Section 103—4 provides that the accused shall be allowed to consult with an attorney after being taken into custody.

We need not reach this issue, because defendant did not raise the issue of statutory violation in his motion to suppress or in his post-trial motion. By failing to move for suppression on a specific ground at trial, defendant has waived his statutory claim on appeal. See *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.