(No. 58407.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BILLY MARTIN, Appellant.

*Opinion filed June 29, 1984.*

WARD, GOLDENHERSH and SIMON, JJ., dissenting.

James J. Doherty, Public Defender, and Judith A. Stewart, Assistant Public Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Maria Elena Gonzalez, James S. Veldman, and Joan S. Cherry, Assistant State's Attorneys, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, Billy Martin and codefendant, Melvin Burnett,

were found guilty of murder, attempted armed robbery, conspiracy to commit armed robbery, and armed violence based on the murder (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—1(a)(3), 8—4, 8—2, 33A—2). This appeal involves the defendant, Billy Martin. He was sentenced to concurrent terms of 75 years for murder, 10 years for attempted armed robbery, 10 years for armed violence, and 7 years for conspiracy. The appellate court, by order, affirmed the judgment of the circuit court, with the exception of the armed-violence conviction, which it vacated. (113 Ill. App. 3d 1164.) We granted leave to appeal.

Two issues are raised on appeal: (1) whether defendant's sixth amendment right to counsel had been violated; and (2) whether defendant made a voluntary, knowing and intelligent waiver of his fifth amendment privilege against self-incrimination prior to making his statements.

Defendant, while in police custody for a prior unrelated offense, gave incriminating statements with regard to the offenses involved herein. Prior to the instant trial, he moved to suppress those statements.

The following facts were revealed at the suppression hearing. The defendant testified that he was arrested and taken into custody on August 30, 1980, on an unrelated charge of rape. Assistant Public Defender Koivun was appointed to represent him at the preliminary hearing on September 2, 1980. The defendant further testified that on November 15, 1980, while in custody on the rape charge, he was taken from his cell to another area of the Cook County Correctional Complex, where he was questioned by Investigators Carroll and Kajari and Assistant State's Attorney Norek, regarding a murder. When asked if he knew Melvin Burnett or anything about a murder, defendant responded in the negative. He testified that he was then shown several photo-

graphs, including one of codefendant Burnett, as well as a written statement made by Burnett. After reading only a portion, the statement was taken from him. He stated that he was told that the statement named him as the "triggerman" in the homicide under discussion. His testimony also reveals that a copy of his "rapsheet" was read to him with the investigator indicating that, based on this record, he believed that defendant was not the "shooter." At this point, defendant described what happened during the shooting incident, admitting his participation in the offense and implicating Melvin Burnett as the "shooter." Following this oral statement, defendant was moved to a second room where the assistant State's Attorney gave him his *Miranda* rights and proceeded to take a written statement.

When asked, on direct examination, about his mental state at the time of interrogation, defendant replied that he was "scared" and "breaking down" because of the rape charge and the accusation that he was the "shooter." In addition, he stated that no one suggested that he contact the lawyer who had been appointed on the rape charge and it did not occur to him that he could do so. Defendant also testified that he was not informed of his *Miranda* rights prior to the initial interrogation. During cross-examination, he was impeached with his written statement taken during the second interview. In that statement, the defendant acknowledged that Investigator Carroll had advised him of his constitutional rights in the earlier interview. Defendant stated, however, that he could not remember making such an admission.

The State called Assistant State's Attorney Norek as a witness at the suppression hearing. He testified that he was called to Area 6 Homicide in the morning of November 15, 1980, where he met with the police officers investigating the homicide. After reviewing the police re-

ports and the written statement of Melvin Burnett, which implicated defendant, he accompanied the officers to the Cook County jail to question the defendant. Norek was present during both interviews and was able to verify that defendant had been fully advised of his constitutional rights, by Investigator Carroll, prior to the first interview. Norek testified that the defendant was asked if he understood those rights and replied affirmatively. Norek also stated that the defendant never asked to speak to an attorney or indicated that he wished to remain silent.

Norek admitted, during cross-examination, that the defendant was told that Burnett had "fingered him as the triggerman" in spite of the fact that the interrogators knew that this was not true. Although Norek was aware that the defendant was in custody at the time of the interrogation, he could not recall if he knew why defendant was in custody, and he denied any knowledge that counsel had been appointed for defendant on the rape charge. Norek testified that he gave the defendant his *Miranda* rights prior to taking the written statement and felt there was no need to inquire whether a lawyer had been appointed in the other case. While Norek stated that the defendant was "surprised" at being identified as the "shooter," he described the defendant's emotional state, during questioning, as "calm and collected."

Investigator Kojari, who was present during both interviews, was called, in rebuttal, on behalf of the defendant. His testimony merely corroborated the testimony of Norek that Investigator Carroll advised the defendant of his *Miranda* rights at the first interview.

The defendant argued that the statements sought to be suppressed were obtained in violation of his fifth amendment right against self-incrimination since they were the product of mental coercion, trickery and deceit

and further that he had been denied his sixth amendment right to counsel. The trial court denied the motion to suppress, stating that defendant's right to counsel was not violated because the interrogation did not occur during a critical stage of the prosecution. Additionally, the court found no fifth amendment violation, concluding that the State had met its burden of demonstrating that the statements were made knowingly and voluntarily. As such, the incriminating statements were later admitted into evidence at the defendant's trial.

The appellate court concluded that the trial court did not err in refusing to suppress the confession. It found that the defendant had voluntarily waived his fifth amendment rights before giving the oral and written statements. Further, it held that defendant's sixth amendment right to counsel had not been violated since this right had not yet accrued.

We turn first to defendant's argument that he was denied his sixth amendment right to counsel. (U.S. Const., amend. VI.) This right is separate from the right to have counsel present during interrogation, which is guaranteed to a defendant pursuant to his fifth amendment privilege against self-incrimination. (U.S. Const., amend V.) Unlike the fifth amendment right of counsel, which is guaranteed during custodial interrogation, the right to counsel assured by the sixth amendment does not attach until adversary judicial proceedings have been initiated. (*Kirby v. Illinois* (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881; *People v. Burbank* (1972), 53 Ill. 2d 261, 271, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) The various methods for initiation of adversary judicial proceedings have been described as "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.

It is undisputed, in the instant case, that adversary judicial proceedings regarding the murder charge had not been initiated at the time the defendant was interrogated. The defendant contends, however, that his sixth amendment right to assistance of counsel had already attached, because at the time of questioning he had been charged with the unrelated offense of rape for which counsel had been appointed. In support of this contention, defendant cites *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, and *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232. We find these cases inapposite. Although the Supreme Court suppressed evidence in these cases, based on sixth amendment violations, they are factually distinguishable from the instant case.

In *Massiah,* the defendant had been indicted twice for violating Federal narcotics laws. After retaining a lawyer and pleading not guilty, he was released on bail. During the time the defendant was out on bail, government agents, with the assistance of a companion of the defendant, installed a radio transmitter in the companion's car. The defendant and his companion had a lengthy conversation in the car, during which defendant made several incriminating statements. The incriminating statements were offered to the jury, which convicted the defendant of several related narcotic offenses. The court held that the defendant's sixth amendment right to counsel was violated when his incriminating statements, which the agents purposefully and surreptitiously elicited subsequent to his indictment and without the assistance of counsel, were used against him at his trial. *Massiah v. United States* (1964), 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203.

It is true, as the defendant points out, that the right to counsel in *Massiah* "extended over three years and over two superseding indictments." The right to counsel,

which is activated with the initiation of judicial adversary proceedings, remains viable until final disposition of the cause. *Massiah* does not stand for the proposition, however, that once a defendant is indicted for one offense, his sixth amendment right to counsel is activated for purposes of any subsequent offense. Although the facts of *Massiah* indicate that following the secret monitoring a superseding indictment was returned which included the original counts as well as additional counts, the new counts were related to the original offense. It is clear that the monitoring activities of the agents were carried out pursuant to their investigation of the narcotics violations, for which the defendant had already been indicted. Further, the incriminating statements were utilized to obtain a conviction for charges for which the defendant had been indicted at the time the statements were procured and therefore clearly violated his right to counsel as guaranteed by the sixth amendment. *Massiah v. United States* (1964), 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203.

Similarly, the court in *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232, found a clear violation of the defendant's sixth amendment right to assistance of counsel, when applying the rule of *Massiah,* which it defined as:

"[O]nce adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." 430 U.S. 387, 401, 51 L. Ed. 2d 424, 438, 97 S. Ct. 1232, 1240.

In *Brewer,* the defendant had been charged with abduction. He was represented by counsel in two counties. Prior to transporting the defendant between counties, defense counsel obtained the assurance of the police officers that defendant would not be interrogated during the trip. Nevertheless, the officers secured incriminating statements from the defendant and persuaded him to lead them to the

body of the missing girl. Subsequently, the defendant was indicted for murder. Finding that judicial proceedings had been initiated against the defendant before the start of the automobile ride, and that defendant had not waived his right to counsel under the sixth amendment, the court held that his incriminating statements could not constitutionally be admitted into evidence. 430 U.S. 387, 399, 406, 51 L. Ed. 2d 424, 436, 441, 97 S. Ct. 1232, 1239, 1243.

The defendant, in the instant case, contends that the situation faced by the defendant in *Brewer* is similar to the facts of this case because the defendant in *Brewer* had not been charged with murder when the incriminating statements were made. We find the facts in *Brewer* similar to those in *Massiah* but distinguishable from those in the instant case. The statements ordered suppressed in *Brewer,* as in *Massiah,* were procured pursuant to the investigation of the original charges for which adversary judicial proceedings had been initiated, activating the sixth amendment right to counsel. In contrast, the interrogation of the defendant which is at issue in the instant case was unrelated to the original charge of rape. This is a critical difference, rendering the holdings of *Brewer* and *Massiah* inapplicable to the facts of this case.

Appellate decisions in this State have consistently refused to expand the holding of *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, to allow the sixth amendment guarantee of assistance of counsel prior to the initiation of adversary judicial proceedings, merely because an individual's right to counsel has attached to an unrelated charge. (*People v. Hall* (1983), 117 Ill. App. 3d 788, 797; *People v. Sanderlin* (1982), 105 Ill. App. 3d 811, 814-15; *People v. Pendleton* (1982), 104 Ill. App. 3d 1104, 1107-08; *People v. Agee* (1981), 100 Ill. App. 3d 878, 881-82; *People v. Martin* (1979), 80 Ill. App. 3d 281, 289-90; *People v. Earl* (1979), 78 Ill. App. 3d 188, 192-93. *Cf. United States v. Gouveia* (1984), 467 U.S.

_____, 81 L. Ed. 2d 146, 104 S. Ct. 2292, wherein the Supreme Court declined to carve out an exception to the holding in *Kirby*. Specifically, the court refused to afford indigent inmates, confined in administrative detention while being investigated for criminal activities, the right to counsel prior to the initiation of adversary judicial proceedings.) It is the position of the defendant that limiting an individual's sixth amendment right to counsel to only those charges for which adversary judicial proceedings have been initiated, when he is already in custody with identifiable counsel of record, "denies [him] the right to counsel at a time when he may need it most." We cannot agree.

We find that defendant's sixth amendment right to assistance of counsel, with respect to the murder charge, had not yet attached. As such, the State was not under a duty to contact Assistant Public Defender Koivun or to advise the defendant of his right to confer with specific counsel. This is not to say that the State did not have to honor the rights afforded the defendant pursuant to his fifth amendment privilege against self-incrimination, which includes a right to counsel to protect this right. The relevant inquiry then becomes whether the defendant was properly admonished of his fifth amendment rights and, if so, whether he knowingly and voluntarily waived these rights.

An individual who is subjected to custodial police interrogation regarding matters that might tend to incriminate him is entitled to the procedural safeguards outlined in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Specifically, he must be warned, prior to questioning, that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to counsel, either retained or appointed. These rights may be waived, if the waiver is made knowingly and intelligently. (384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.) The defendant contends that he did not make a knowing and

intelligent waiver of counsel. In addition, he maintains that his confession was involuntary as it was a product of mental coercion.

In support, defendant cites *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, and *People v. Smith* (1982), 93 Ill. 2d 179, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107, as authority for his contention that his statements were taken in violation of his constitutional right to the presence of counsel during custodial interrogation. Defendant's reliance on these cases is misplaced. In *Smith,* the defendant was arrested pursuant to a murder investigation. He retained an attorney several hours after his arrest. After engaging counsel, the defendant made incriminating statements, unaware that his attorney's attempts to confer with him were being frustrated. In a narrow holding, which the court specifically stated it was answering based on the fifth amendment protection against self-incrimination, it stated:

> "[W]hen police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him." (93 Ill. 2d 179, 189.)

We have already found that the State, in the instant case, did not have to advise the defendant of his right to confer with specific counsel, since his sixth amendment right to counsel on the rape charge had not attached to the murder charge. Implicit in this finding is the conclusion that Assistant Public Defender Koivun was not defendant's attorney of record on the murder charge at the time of interrogation. Further, there is no indication that Koivun attempted to see the defendant. As such, the holding in *Smith* is inapplicable to the facts of this case.

Likewise, the holding in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, provides

no guidance for the resolution of the fifth amendment right to counsel issue in this case. *Edwards* holds that once a suspected criminal invokes his right to counsel, during custodial interrogation, he cannot be questioned further until counsel has been made available, unless the suspect himself initiates further dialogue. (451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.) Since defendant in this case did not invoke his right to counsel either in response to the *Miranda* warnings or at any time during the interrogation, the rule established in *Edwards* has no bearing on this case.

"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) It is well established that a presumption of waiver from a silent record is impermissible. (*Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.) This court has held that a valid relinquishment of the right to counsel is not dependent on an express waiver. When an individual has been admonished of his rights and indicates that he understands them, his giving of a statement without requesting a lawyer is evidence that he chooses to waive a known right. *People v. Pittman* (1973), 55 Ill. 2d 39, 52; *People v. Burbank* (1972), 53 Ill. 2d 261, 266, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.

The record, in the instant case, reveals that the defendant was advised of his *Miranda* rights prior to any questioning, stated that he understood those rights, and proceeded to make an oral and written statement without requesting an attorney or indicating that he wished to remain silent. Although, at the suppression hearing, the defendant denied that he was given his *Miranda* warnings

before he made his oral statement, his signed written statement affirmatively states that he was advised of and understood his constitutional rights before the initial interview. Defendant was again advised of his *Miranda* rights before his written statement was taken. He indicated that he understood those rights and wished to speak to the interrogators. The defendant was able to read and write English and never indicated that he did not understand the questions or the written statement, which he read prior to signing.

The trial court must initially determine whether a defendant has been properly admonished of his fifth amendment rights and whether he knowingly, intelligently and voluntarily waived these rights. In making its decision, the court does not have to be convinced beyond a reasonable doubt, and its findings will not be disturbed unless they are against the manifest weight of the evidence. (*People v. Burbank* (1972), 53 Ill. 2d 261, 266, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017; *People v. Medina* (1978), 71 Ill. 2d 254, 258; *People v. Davis* (1983), 97 Ill. 2d 1, 20.) Based on the facts and circumstances presented, we find that the evidence clearly demonstrates that the trial court's finding that defendant was properly advised of his rights and knowingly and intelligently waived them was not against the manifest weight of the evidence. Further, we do not find that the misrepresentation of the interrogators was such as to invalidate an otherwise voluntary confession.

The procedural safeguards outlined in *Miranda* were designed in recognition of the fact that during custodial interrogation "coercion can be mental as well as physical." (*Miranda v. Arizona* (1966), 384 U.S. 436, 448, 16 L. Ed. 2d 694, 709, 86 S. Ct. 1602, 1614.) It is defendant's position that the deliberate misstatements of the interrogators rendered his confession involuntary. When determining whether a statement has been voluntarily given this court

looks to the "totality of the circumstances." (*People v. Prim* (1972), 53 Ill. 2d 62, 70, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *People v. Prude* (1977), 66 Ill. 2d 470, 475, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418.) "The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed." *People v. Prim* (1972), 53 Ill. 2d 62, 70.

It is undisputed that the police and assistant State's Attorney falsely informed the defendant that Melvin Burnett had given a statement naming him as the "triggerman." The deception, however, does not invalidate the confession as a matter of law. This circumstance, while relevant, is but one factor to consider when making a determination of voluntariness. (*Frazier v. Cupp* (1969), 394 U.S. 731, 739, 22 L. Ed. 2d 684, 693, 89 S. Ct. 1420, 1425; *United States ex rel. Hall v. Director* (7th Cir. 1978), 578 F.2d 194, 196.) Other factors to be considered include the age, education and intelligence of the accused, the duration of questioning, and whether he received his constitutional rights or was subjected to any physical punishment. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 226, 36 L. Ed. 2d 854, 862, 93 S. Ct. 2041, 2047.

In this case the defendant was advised of his *Miranda* rights and was neither subjected to a lengthy interrogation nor physically abused or threatened. Although not a high school graduate, defendant is literate, and the record supports the inference that he understood his constitutional rights and the questions he was asked, as well as his own written statement. Further, his confession is not rendered involuntary because he may not have understood the principles of criminal accountability and the implications of the acts admitted. *People v. Henderson* (1967), 37 Ill. 2d 489, 491-92, *cert. denied* (1967), 389 U.S. 943, 19 L. Ed. 2d 297, 88 S. Ct. 305.

For the reasons stated, the trial court properly denied defendant's motion to suppress. As such, the judgment of the appellate court affirming the convictions for murder, attempted armed robbery and conspiracy and vacating the conviction for armed violence is affirmed.

*Judgment affirmed.*

JUSTICE WARD, dissenting:

The biblical admonition is that the letter of the law killeth. This ancient wisdom is illustrated by the majority's holding that the defendant was not entitled to the assistance of counsel before undergoing interrogation on the murder charge. With what I consider too narrow a perception of the right to assistance of counsel, the majority says that "the interrogation of the defendant which is at issue in the instant case was unrelated to the original charge of rape." 102 Ill. 2d at 422.

The majority does not deny that knowledge that the public defender had been appointed on September 2 and that an assistant public defender was representing the defendant was attributable to the State's Attorney's office. The majority seems simply to put the defendant's right to the public defender's assistance, and that attorney's responsibility to the defendant as well, into an isolated box. I cannot agree that the right to assistance of counsel here, and the corollary, namely, the responsibility of the appointed attorney to provide counsel, were confined to the criminal charge which resulted in the attorney's appointment. I have a broader perception. I consider that this defendant, who, one may add, was in custody and under police control, had a right to the advice of the attorney appointed to represent his interest and that the attorney had an obligation to provide counsel at a time when the client was being interrogated on another crime and another charge against him was being sought. Would the majority hold that had his attorney been advised that the defendant

was seeking his counsel whether to respond to questioning about the murder the attorney could properly have refused to see his client on the ground that his professional obligation was limited exclusively to the rape charge?

The opinion illustrates the narrowness of the majority's view of the right to the assistance of counsel in stating that "assistant public defender Koivun was not defendant's attorney of record on the murder charge at the time of interrogation." While the primary responsibility of the attorney was on the rape charge, to say that he had only the responsibility of counseling on that charge and that the benefit of counsel to which the client was entitled was also so limited seems dangerously close to making the attorney's appointment here only a formalism.

The majority does say that the People did have an obligation under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, to honor the rights of the defendant against self-incrimination, which included a right to counsel to protect his rights. After discussion, the majority concludes that the defendant waived these rights. I feel that the defendant's comprehension of his rights under *Miranda* was doubtful. It is not unreasonable to conclude that had he understood that he was being told that he had a right to an attorney's assistance he would have responded that he already had an attorney—assistant public defender Koivun.

GOLDENHERSH and SIMON, JJ., join in this dissent.

JUSTICE GOLDENHERSH, also dissenting:

I dissent and would reverse the judgment and remand the cause for a new trial. I am unable to agree that there was a knowing, voluntary waiver of defendant's right to silence in the face of the undisputed testimony that the police and assistant State's Attorney falsely informed the defendant that Burnett had given a statement naming

defendant as the "trigger man" in the case. In *Miranda v. Arizona* (1966), 384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629, the Supreme Court said:

"[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver [of the fifth amendment privilege against self-incrimination] will, of course, show that the defendant did not voluntarily waive his privilege."

*Frazier v. Cupp* (1969), 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, does not support the majority's conclusion. *Frazier* was tried before the decision in *Miranda,* and the Supreme Court expressly held that it was not applicable to the case. This court, long prior to *Miranda,* held that confessions "acquired by trick, promises, or threats" are inadmissible. *People v. Stevens* (1957), 11 Ill. 2d 21, 27.

There is no difference in principle between the withholding of evidence favorable to a defendant and the wilful, knowing falsehood which tricked defendant into making the statement. To sweep this type of official misconduct under the rug on the basis that it is merely a part of the "totality of the circumstances" serves to denigrate and demean the judicial process. The majority offers no explanation how, in the face of the falsehood, the waiver here could have been knowingly and voluntarily made. The reason, I submit, is obvious—because there is none. I would remand for a new trial.

WARD and SIMON, JJ., join in this dissent.