THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BEN TOM JONES, Defendant-Appellee.

Second District   No. 83—507

Opinion filed December 20, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Catherine Anagnost, of Anagnost & Anagnost, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Ben Tom Jones, was found guilty in a jury trial of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)). His motion for a new trial was denied, except that the court reserved its ruling on defendant's contention that the court previously had erred in denying his pretrial motions to suppress his confession. After sentencing the defendant to a term of imprisonment of six years plus 180 days, the trial court immediately thereafter vacated the sentence and judgment of conviction, granted a new trial, and granted the defendant's pretrial motions to suppress his confession. The State filed a certificate of impairment and appeals pursuant to Supreme Court Rule 604(a)(1) from that portion of the order suppressing defendant's confession.

The issue raised on appeal by the State is whether the trial court's determination that defendant had not knowingly and intelligently waived his right to counsel during a police interview was against the manifest weight of the evidence.

The procedural posture in which we receive this case is somewhat unusual. For purposes of this appeal, it is necessary to relate only the proceedings on the motion to suppress defendant's confession and certain portions of the trial evidence, as most of the trial evidence is not essential for review purposes in view of the trial court's vacation of the judgment of conviction and grant of a new trial.

Defendant's several pretrial motions to suppress his confession alleged, *inter alia,* that prior to his interrogation he had not been given the *Miranda* warnings, and that he had invoked his right to counsel but the police nevertheless interrogated him without obtaining a waiver of his right to counsel. At a hearing on these pretrial motions, the following testimony relevant to the issue on appeal was adduced.

Thomas E. Vosburgh, a detective with the Du Page County sheriff's office, testified that Ben Jones brought his son, defendant Ben Tom Jones, to the sheriff's office in response to a prior telephone call in which he, Vosburgh, wanted to talk with defendant about an armed robbery in Woodridge. The three went to an interview room,

and Vosburgh read defendant the *Miranda* warnings verbatim from a card. Defendant said he understood each right and agreed to answer the questions. He did not ask for a lawyer at any time and did not refuse to answer any questions. The questioning took about 40 minutes. Vosburgh determined defendant was not involved in that armed robbery, and then advised defendant that other officers wished to talk with him. After introducing defendant and his father to Detective Herb Hogberg from the Elmhurst police department and to Detective James Romani from the Oakbrook police department, he went to his office and did not participate in any further questioning of defendant. He had not informed defendant's father previously that other officers would question defendant about other offenses.

Detective Hogberg testified that he advised defendant from memory that he had a right to remain silent and a right to an attorney during any questioning, that anything he said could be used against him in a court of law, that if he could not afford an attorney, one would be appointed by the court but couldn't be appointed that night—"at a later date if he was ever charged with anything." He never specifically told defendant he could have an attorney during this particular interrogation. Defendant either nodded his head or stated he understood after each statement and at the end. Defendant's father also said he understood, as he was a police officer in Bellwood. Only Romani, defendant and his father, and Hogberg were there throughout the questioning. Hogberg advised defendant he was investigating an armed robbery in Elmhurst. At first defendant denied knowledge of the incident, but then gave incriminating statements. At no time did defendant ask for a lawyer or indicate he wished the questioning to stop. After the incriminating statements were made by defendant, his father asked whether he should get an attorney and Hogberg said it was up to him. Later, the defendant said he had better get an attorney, and the questioning ceased.

Detective Romani testified, in pertinent part, that Hogberg advised defendant of his rights before questioning him, maybe from a card, but he was not certain, and that defendant acknowledged orally that he understood the rights and never asked for an attorney. Defendant's father had once inquired whether he should get an attorney and was told that was his decision. Later, defendant's father said he should get an attorney, and the questioning stopped. The interview took approximately 30 minutes. Defendant did not execute a written waiver of his rights.

Defendant's father testified that he was a part-time policeman, that during the first questioning by Vosburgh defendant was not advised of his rights until defendant said, "Hold it, we wants a lawyer." Then Vosburgh told defendant of his right to remain silent and that anything he said could be used against him. Vosburgh did not recite from a card. His son denied involvement, and was then questioned by the other two detectives. He told them that they were not answering any questions and they wanted a lawyer. The officers just went on talking, and his son then made statements. Defendant himself did not testify at the hearing.

The trial court denied the motion to suppress the confession, stating that it was difficult to resolve the conflicting testimony, but did so on the basis of the "reasonableness of the conflicting stories." The court found Vosburgh accurately admonished defendant from the rights card. However, the trial judge felt Hogberg's explanation of the presence of a lawyer that night might have been misleading, and his difficulty in recalling gave her trouble. She concluded that the State had met its burden on the issue because of Vosburgh's credible testimony regarding his reading of the rights and Romani's testimony that Hogberg also gave the rights accurately.

At trial, Hogberg's testimony pertinent to his questioning of defendant was that he orally advised defendant of his rights, that defendant nodded or said he understood after each right was explained, and although he did not specifically tell defendant he had a right to an attorney during that particular questioning, he thought defendant understood he had the right to an attorney during any questioning. He did not give defendant a rights waiver form to sign. Romani gave testimony similar to that at the pretrial hearing regarding Hogberg's advising defendant of his *Miranda* rights. To his recollection the defendant responded at the summation of the admonitions. He didn't recall Hogberg telling defendant he had a right to have an attorney present for that particular interrogation or that defendant could stop any time and refuse to answer and request an attorney.

After the defendant had been found guilty by the jury and immediately following her sentencing of the defendant, the trial judge vacated the sentence and judgment, granted a new trial, and suppressed the confession. As we can best summarize, the trial judge remarked that she had not ruled on the credibility of the witnesses at the pretrial hearing, that she was not doing so now, and she was reassessing her ruling on the "reasonableness" of what happened.

The judge stated that "[t]he narrow ground of my ruling is not that the defendant wasn't warned, but that I do not believe there is the requisite showing that he knowingly and intelligently waived his right to counsel. It is the single issue of my ruling." Nevertheless, the judge went on to remark that although the pretrial hearing testimony of Romani convinced her that the State had met its burden, there was some difference in the trial testimony concerning whether Hogberg paused after each *Miranda* warning, and she now felt the State had not met its burden to show a knowing and intelligent waiver of defendant's right to counsel.

We first note that, although the issue is not before us on appeal, there was some question raised below whether defendant was in custody during the second questioning when he gave the confession. The court below found defendant was not free to leave and, considering this record and the State's failure to seek review of this question, we do not consider the point further.

██ ■ The relevant inquiry before us is whether the defendant knowingly and intelligently waived his fifth amendment rights and, in particular, his right to counsel. Certain well-established principles are involved. The State bears the burden of demonstrating that a defendant has been warned of his constitutional rights under the fifth amendment and has waived them. (*People v. Hebein* (1982), 111 Ill. App. 3d 830, 845, 444 N.E.2d 782.) The trial court must initially determine these questions and, in making its decision, the court does not have to be convinced beyond a reasonable doubt; its findings will not be disturbed unless they are against the manifest weight of the evidence. (*People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228.) In order to establish a valid waiver of the right to counsel, the State must prove an intentional relinquishment or abandonment of a known right or privilege. (*People v. Aldridge* (1980), 79 Ill. 2d 87, 93, 402 N.E.2d 176.) The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *People v. Martin* (1984), 102 Ill. 2d 412, 425, 466 N.E.2d 228.

The trial court expressly found at the time of the hearing on the motion to suppress and later at the new trial motion hearing that defendant was given his *Miranda* warnings. The record supports this conclusion. Hogberg's explanation to defendant that if defendant could not afford an attorney one would be appointed for him by the court, but at a later date if he was ever charged, was not entirely

accurate. However, neither defendant nor his father testified that defendant was misled by the erroneous reference to appointed counsel if he was ever charged or that the warning was explained in this fashion. Moreover, Romani did not testify that this misstatement was made by Hogberg when advising defendant of his rights. In fact, he testified that Hogberg told defendant an attorney would be appointed by the court to represent him, if he wished, and told defendant he could exercise his rights at any time and not answer any questions. Nor did Hogberg use the inaccurate phraseology when testifying on cross-examination at the pretrial hearing and at the trial as to his explanation of the *Miranda* warnings. Any deficiency in this respect has not been established in this record. Accordingly, we focus on whether the defendant knowingly and intelligently waived his right to counsel.

The unusual circumstances present in this record are that the trial court originally ruled, after a pretrial hearing on defendant's motion to suppress his confession, that the State had met its burden on both the admonition of rights and a waiver thereof. At the hearing on defendant's post-trial motion for a new trial, the trial court, however, granted a new trial and suppressed the confession, finding there were certain discrepancies raised in the trial testimony which persuaded it that the State had not met its burden on the waiver of counsel issue only.

■■ ■ Generally, relitigation in the form of another hearing of a prior order denying a pretrial motion to suppress should not be conducted in the absence of additional evidence or peculiar circumstances. (See *People v. Armstrong* (1973), 56 Ill. 2d 159, 161, 306 N.E.2d 14; *People v. Hopkins* (1972), 52 Ill. 2d 1, 4, 284 N.E.2d 283; *People v. Coleman* (1981), 100 Ill. App. 3d 306, 310-11, 426 N.E.2d 1124.) While here, no new motion to suppress was made during trial based upon additional evidence or unusual circumstances, the trial court did consider the trial testimony in reassessing its initial decision on the motion to suppress during the proceedings on defendant's post-trial motion for a new trial. A pretrial ruling on suppression is not final and may be changed or reversed at any time prior to final judgment. (*People v. Caballero* (1984), 102 Ill. 2d 23, 35-36, 464 N.E.2d 223.) The function of a pretrial hearing on a motion to suppress a confession is specifically to conduct an evidentiary hearing into the merits of the motion and for a determination based upon the facts adduced. However, once this motion is decided at that hearing, the focus of the trial testimony is not directed to a reestablishment of the issues previously resolved at the pretrial

hearing, nor is there any requirement to do so.

■ The trial court apparently thought that detective Romani's trial testimony, that he didn't "recall him [Hogberg] stopping after" each warning, was a significant departure from the pretrial hearing testimony to conclude that the State had not met its burden to show a knowing and intelligent waiver of counsel. Hogberg had testified at the pretrial hearing that defendant nodded his head or stated he understood after each right was given him and at the end. Romani testified at the pretrial hearing that defendant said he "acknowledged understanding them," but was never asked by the State or defendant when defendant acknowledged the understanding of the rights. We do not find consideration of Romani's trial testimony warranted the trial court's ultimate suppression of the confession on the specific basis that defendant did not make a knowing and intelligent waiver of his right to counsel, and the finding was against the manifest weight of the evidence.

As we stated earlier, the trial court expressly found at the time of its ultimate ruling suppressing the confession that defendant had been given the *Miranda* warnings. On the waiver issue, the trial judge expressly stated she was not making a credibility assessment even though the officers' testimony and the defendant's father's testimony was directly contradictory on whether defendant waived his right to an attorney. Instead, the court phrased its conclusions in terms of "reasonableness of what happened." While the court below should have made a more specific finding on the credibility of the witnesses under the circumstances here to facilitate appellate review, we shall presume that the trial court credited only the testimony that supports its ruling. (See *People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299.) In this regard, we shall therefore assume that the court below felt that Officer Hogberg's testimony, that he paused after each warning was read to the defendant and defendant acknowledged those rights, was not credible, and in view of this failure to obtain an acknowledgement after each warning, defendant did not knowingly and intelligently waive his right to counsel.

■ *Miranda* does not specify the precise manner and language to be used in advising a defendant of his constitutional rights. It requires not a ritualistic recital of words, but an intelligent conveyance of the right to remain silent and of the general right of counsel. (*People v. Merrero* (1984), 121 Ill. App. 3d 716, 722, 459 N.E.2d 1158.) We believe that the failure to pause after the reading of each right and to receive an acknowledgment of understanding and

waiver of that right before proceeding with admonition of the next right is not required in order to effectuate a knowing and intelligent waiver. When an individual has been admonished of his rights and indicates that he understands them, his giving of a statement without requesting a lawyer is evidence that he chooses to waive a known right. *People v. Martin* (1984), 102 Ill. 2d 412, 425, 466 N.E.2d 228; *People v. Brooks* (1972), 51 Ill. 2d 156, 164, 281 N.E.2d 326.

■ Here, the defendant was first given his *Miranda* warnings by Officer Vosburgh and, according to Vosburgh, defendant said he understood them and agreed to talk with him. Defendant did not refuse to answer any questions or request a lawyer at any time. Although the defendant's father contradicted this testimony by testifying that defendant asked for a lawyer and was not advised of his rights prior to the questioning, the trial court specifically found Vosburgh gave the required warnings. The court never stated whether defendant knowingly and intelligently waived his rights to Vosburgh—perhaps because no incriminating statement was made to Vosburgh on the unrelated armed robbery for which he was being questioned. There is no reason not to conclude that the trial court, when it originally denied the motion to suppress, found that defendant had waived his rights to Vosburgh. Moreover, there is nothing that the court below said, when it reversed itself and did suppress the confession, that relates to Vosburgh's testimony. Thus, we conclude defendant was advised of his rights by Vosburgh and knowingly and intelligently waived them.

It has been held that once *Miranda's* mandate has been complied with at the threshold of the questioning, it is not necessary to repeat the warnings at the beginning of each successive interview conducted close in time to the original warnings. (*People v. Hill* (1968), 39 Ill. 2d 125, 131-32, 233 N.E.2d 367; *People v. Beamer* (1978), 59 Ill. App. 3d 855, 858, 376 N.E.2d 368.) Although the second questioning, which immediately followed, by Hogberg and Romani, who were not with the same law enforcement agency as Vosburgh, concerned separate crimes, courts have generally taken the position that new warnings are not required just because there has been a change in the locale of the interrogation, in the officers doing the questioning, or in the subject matter of the investigation. (See 1 W. LaFave & J. Israel, Criminal Procedure sec. 6.8, at 520 (1984).) Under the circumstances present here, we find that the warnings given and the waiver of the rights at the initial questioning by Vosburgh were an adequate protection of defendant's fifth

amendment right as applied to the immediate, subsequent questioning by Hogberg and Romani.

Even without considering Vosburgh's warnings, we conclude from this record that there has been a knowing and intelligent waiver of the right to counsel. The trial court consistently found defendant was correctly given the *Miranda* warnings at the second interview with Hogberg and Romani. Defendant, according to Hogberg and Romani, said he understood his rights and gave a statement without requesting a lawyer. The trial court appeared to suppress the confession only on the basis of trial testimony which, as previously discussed, was that there was no pause between the warnings for defendant to then respond rather than at the end of the admonitions. Although we place great weight on the findings of fact by the trial court, for all the foregoing reasons, the order suppressing the evidence was manifestly erroneous. See *People v. Winters* (1983), 97 Ill. 2d 151, 163, 454 N.E.2d 299.

■ The trial court's order to suppress the confession after granting a new trial was manifestly erroneous, requiring reversal and remandment. However, we are compelled to further comment on the trial court's erroneous assumption, made at the time it vacated the sentence and conviction, that "if the State prevails in the appeal, *** I am hopeful that the Appellate Court will send it back and say that the judgment of conviction shall be reinstated and that the sentence should be reinstated." While a reviewing court may in proper circumstances upon a defendant's appeal of his conviction vacate the judgment and remand for a redetermination of facts not originally considered or found by the trial court in a pretrial hearing to suppress and direct reinstatement of the conviction following that hearing if suppression is denied (see *People v. Simmons* (1975), 60 Ill. 2d 173, 181-82, 326 N.E.2d 383; *People v. Lane* (1982), 106 Ill. App. 3d 793, 798, 436 N.E.2d 704), there is no authority for the trial court to vacate a judgment of conviction and grant a new trial, and upon the reviewing court's reversal of its granting of a motion to suppress, to reinstate the original judgment of conviction and sentence. Nor does a reviewing court have authority to issue such directions to a trial court. (See 87 Ill. 2d R. 615(b).) In view of the trial court's action, the suppression order is reversed, and the cause remanded for a new trial.

Reversed and remanded.

NASH and HOPF, JJ., concur.