THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROLAND J. KASHNEY, Defendant-Appellant.

First District (4th Division)   No. 82—431

Opinion filed December 6, 1984.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Mary Alice McKenzie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial defendant Roland Kashney was convicted of the murder of Benjamin Peck and sentenced to an indeterminate term of 30 to 60 years in the penitentiary. Defendant contends that he is entitled to reversal of his conviction and a new trial because: (1) he was improperly arrested without probable cause for murder by police using the pretext of an outstanding warrant on a minor charge and was subsequently coerced into falsely confessing; (2) defendant's motion to rehear his motion to suppress, based on evidence not previously available, should have been allowed; (3) the State improperly impeached the defendant with statements made to psychiatrists examining him pursuant to court order; (4) improper final argument by the prosecution denied defendant a fair trial.

We affirm.

The defendant was charged with the 1970 murder and armed robbery of Margaret Riggins and the 1974 murder and armed robbery of Benjamin Peck. The State's evidence established that the body of Peck was found lying face down on the kitchen floor of his home on September 21, 1974. He had massive wounds on the back of his head and the examining pathologist determined that death was caused by a skull fracture of blunt trauma character. The State introduced the confession of the defendant in which he stated that he came to Peck's

house to discuss the sale of a car to Peck. An argument began as they spoke in the kitchen, and defendant struck Peck several times on the head with a wrench. He took several hundred dollars from Peck's person and disposed of the wrench. No fingerprints suitable for comparison were found at the Peck house.

The body of Margaret Riggins was found lying on the floor of her living room on October 5, 1970. Her bedroom drawers had been ransacked, and her purse had been emptied onto the kitchen table. Next to her body was a watch which family members did not recognize. The porcelain top of a toilet tank was found in pieces around her body. The examining pathologist concluded that Riggins died as the result of a cranial cerebral injury with extensive skull fracture. Unidentified fingerprints not matching those of the defendant were found in Riggins' home.

In the defendant's confession, introduced by the State, he stated that he had gone to Riggins' home to sell her a watch. While discussing the watch in her living room, the conversation turned to the subject of religion and became heated. Defendant became angry and after using the bathroom he took the toilet tank top and beat Riggins on the head with it. He then searched the apartment for money and left. (In a tape-recorded confession not included in the record on appeal defendant apparently also admitted to have taken some money.)

The defendant took the stand and denied having committed any of these acts. He testified that he had falsely confessed because of the pressure of satanic forces or demons within the police officers who questioned him. Those forces made him fear for his life. The defendant also presented the testimony of two self-styled experts in the field of demonology, Reverend John A. Nicola, a Catholic priest with a doctorate in sacred theology, and Reverend Lester Sumrall, a Protestant minister who testified that he had engaged in approximately 1,000 exorcisms. Both men testified they believed demons existed. Nicola also testified that he had participated in several exorcisms and had observed people who were terrified by their belief that a third person was possessed by the devil. Sumrall testified that demons were capable of possessing a human being and that others could recognize such possessions.

Also testifying for the defendant were two psychiatrists, Dr. Robert A. Reifman and Dr. Jewett Goldsmith. Reifman testified that in separate court-ordered fitness examinations in August 1977 and March 1978, he had determined that the defendant suffered from a schizophrenic reaction, paranoid type. Reifman described this as a serious mental illness characterized by delusions based on misinterpreta-

tion or misperception of reality. Goldsmith had examined the defendant in September 1977 and had made a diagnosis of a chronic paranoid state, which he described as a mental illness characterized by false beliefs or illusions. According to Goldsmith these illusions could be persecutory, causing the individual to become fearful of people he believed could harm him. In October 1979, Goldsmith again examined the defendant and found him to be schizophrenic but in remission.

At the conclusion of the trial the jury found the defendant guilty of the murder of Benjamin Peck but acquitted him on the other charges.

## I

■ Defendant contends that his confessions should have been suppressed as the products of an improper pretext arrest and subsequent coercive questioning. Defendant concedes that at the time of his arrest the police were aware of an outstanding Wisconsin arrest warrant for him relating to his escape from detention on nonsupport charges. However, defendant contends that the police used this warrant merely as a pretext for arresting him on suspicion of having committed the two murders on which they lacked probable cause to arrest. Because we find that the police clearly did have probable cause to arrest the defendant for murder, we do not reach the issue of what would constitute an improper pretext arrest under Illinois law.

At the hearing on defendant's motion to suppress, arresting officer Frank Radke presented the following testimony relating to probable cause. At 8:30 p.m. on February 22, 1975, he spoke to Sharon Henderson pursuant to a call from her father. The police had been seeking to question her in connection with the murder of Peck (although not as a suspect) and had told her father to call them when she returned to Chicago. Henderson told Radke that she was the defendant's girlfriend and had been Peck's girlfriend. She said the defendant had confessed to her that he had killed Benjamin Peck over the price of an automobile. He also told her he had killed a woman approximately five years earlier in the area of Ashland and Fullerton in Chicago. Upon investigation, Radke determined that Margaret Riggins had been killed in 1970 at 1742 West Altgeld, which was about one block west of Ashland and one block north of Fullerton. Radke testified that Henderson had never given him information in the past. Several hours after Radke obtained this information the defendant was arrested at gunpoint in his home without an arrest warrant for murder having been obtained.

Probable cause is judged by whether the facts and circumstances

known to the police would cause a man of reasonable caution to believe that an offense had been committed and the person to be arrested had committed it. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) Contrary to defendant's contention there is nothing in this record to suggest that Sharon Henderson was a police informant whose information would thus be subjected to special reliability requirements which have been retained under the totality-of-the-evidence test developed in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, and adopted by the Illinois Supreme Court in *People v. Tisler* (1984), 103 Ill. 2d 226. Citizen informants such as Sharon Henderson have never been subject to the special reliability tests applied to police informants. *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.

Absent such special requirements, it is clear that the information obtained by the police in this case gave them probable cause to arrest the defendant for murder. In *People v. Goode* (1979), 72 Ill. App. 3d 798, 391 N.E.2d 156, the police were informed by the defendant's aunt that when confronted with her accusations of having stolen items from her he said if he needed money he would "stick up an I.C. station again." The police then determined that an Illinois Central railroad station had recently been robbed. This court held that this information was sufficient to establish probable cause to arrest the defendant for that armed robbery. In this cause, the police were told by the defendant's girlfriend that he had admitted killing Benjamin Peck. The police were also able to verify that a second killing to which the defendant confessed had occurred at the approximate time and location described by the defendant. We find that this information provided the police with probable cause to arrest the defendant for murder.

The defendant has also contended that his confessions were coerced. He relies primarily on the assertion that the trial court found credible his claim that the police had struck him on the head in the course of interrogation. But in fact the trial court clearly found that it did not believe this testimony, noting that it was contradicted by the police and by an assistant State's Attorney, who testified that upon being questioned outside the presence of the police the defendant said he had not been mistreated. Although defendant also testified that he was not informed of his rights until after he gave an initial oral confession, the police testimony at the hearing was that he was fully informed of his rights before any statement was obtained from him. This conflicting testimony was a matter for the trial court to resolve

as the finder of fact, and we find no basis for disturbing the court's finding that defendant's confessions were not coerced. *People v. De-Savieu* (1983), 120 Ill. App. 3d 420, 458 N.E.2d 504.

## II

■ Defendant also contends that the trial court abused its discretion when it denied his motion for a rehearing of his motion to suppress. Defendant's original motion to suppress was denied April 26, 1977, after a hearing in which defendant testified that his confessions were physically coerced by the police. On June 28, 1977, defendant's counsel requested a fitness rehearing and on September 27, 1977, the defendant was found unfit to stand trial. Defendant was again found fit for trial on May 2, 1980. On May 11, 1981, newly appointed counsel appeared for the defendant and moved for a rehearing of the motion to suppress in the following colloquy:

"[Defense counsel]: I would ask the Court to reconsider [the motion to suppress] and make an offer of proof now. My offer would consist of the fact there are new facts that should be brought to the Court's attention and simply that those facts I do not believe were brought up in the prior motion to suppress and that consists of my client's observance of the police officers and what he saw within them at the time. This was never brought up.

The Court: Well, whatever could have been brought up was brought up. There is no reason why it couldn't have been, is that right?

[Defense counsel]: I didn't present the motions, Judge."

Defendant contends that under the authority of section 104—11(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—11(d)), the trial court should have granted a new hearing. That statute provides:

"Following a finding of unfitness, the court may hear and rule on any pretrial motion or motions if the defendant's presence is not essential to a fair determination of the issues. A motion may be reheard upon a showing that evidence is available which was not available, due to the defendant's unfitness, when the motion was first decided."

This statute appears to contemplate situations in which a defendant is presently unfit or has previously been unable to testify because of unfitness. Here the defendant did testify at the hearing on his motion to suppress, and it would appear that he had merely changed his testimony since that time. Defense counsel's offer of proof failed to even

allege that the evidence sought to be presented was unavailable at the first hearing or was somehow affected by the subsequent determination of defendant's unfitness for trial. This attempt to seek a new hearing based on a change in the defendant's testimony is analogous to attempting to advance a newly developed argument based on previously known evidence, a basis which has been held insufficient to support a motion for rehearing. (*People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.) We do not believe that the mere fact that a defendant has changed his account of what occurred from his previous testimony constitutes new evidence or such other exceptional circumstances as would require reconsideration of a motion to suppress. *People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14; *People v. Colletti* (1978), 61 Ill. App. 3d 289, 377 N.E.2d 1276.

### III

■ Defendant next contends that the court erred when it allowed the State to question the defendant concerning statements he made to psychiatrists who performed court-ordered fitness examinations on him. Defendant contends that in conducting this questioning the State violated section 104—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—14(a)), which provides in pertinent part:

"Statements made by the defendant and information gathered in the course of any examination or treatment ordered under Section 104—13, 104—17 or 104—20 [pertaining to fitness for trial] shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged or intoxicated condition, in which case they shall be admissible only on the issue of whether he was insane, drugged, or intoxicated."

We believe that under the unique circumstances of this case there was no violation of this statute. The defendant did not present a classic insanity defense in the sense of admitting the commission of the acts charged but contending that he was insane when he committed them. But he did present evidence suggesting to the jury that he was insane when he confessed to the crimes. Defendant claimed in his testimony that he confessed falsely because of the presence of evil entities in the officers who questioned him. To bolster this testimony, defendant presented the testimony of two experts in demonology who suggested that people could believe that others were possessed by demons and could be terrified by this belief. Defendant also presented the testimony of two psychiatrists who stated that they had previ-

ously diagnosed the defendant as suffering from a mental illness characterized by false beliefs or illusions. Clearly this was intended to suggest to the jury that defendant confessed because of delusions caused by a mental illness. Without objection from the defendant, the State cross-examined these doctors concerning his statements to them that he ·communicated with demons or spirits. Defendant's only objections at trial and on appeal were to cross-examination of him concerning inconsistent statements he made to examining psychiatrists. Over defense objection, the State elicited from defendant the admission that he had told these psychiatrists at various times that he confessed because the police put pressure on him, because spirits told him to confess, and because God told him to do so. On one occasion he told a psychiatrist that he had killed the two people with the unction or inspiration of God. The jury was instructed that defendant's prior inconsistent statements were to be considered only on the issue of his credibility.

The statute invoked by the defendant permits the use against the defendant of statements by him and information gathered in the course of court-ordered mental examinations if the defendant raises the defense of insanity. Here, the defendant presented evidence which could have been construed by the jury as indicating that he falsely confessed because of delusions caused by his mental illness. In presenting this theory the defendant utilized information obtained during his previous psychiatric examinations. We do not believe that in these circumstances the legislature intended to preclude the State from also utilizing information and statements obtained during such examinations in an effort to impeach the defendant. To rule otherwise would allow a defendant to commit perjury without the risk of being confronted with prior inconsistent statements. See *United States v. Castenada* (7th Cir. 1977), 555 F.2d 605, *cert. denied* (1977), 434 U.S. 847, 54 L. Ed. 2d 113, 98 S. Ct. 152.

An analogous Federal rule (Fed. R. Crim. P. 12.2(c)) bars the use of statements made by the defendant during such examinations on the issue of guilt. In *United States v. Halbert* (9th Cir. 1983), 712 F.2d 388, *cert. denied* (1984), 465 U.S. 1005, 79 L. Ed. 2d 230, 104 S. Ct. 997, the court noted that legislative history and prior case law had established that the rule permitted the defendant's statements to be used on the issue of insanity and then concluded that Congressional intent to allow that use indicated that the statements could also be used on the issue of the mental capacity of the defendant. In this cause the statements admitted as impeachment related to the issue of defendant's mental condition when he confessed. This issue was first

cause he perceived threats by demons and by defendant's presentation of psychiatric evidence that he had suffered from a mental illness which caused delusions. We find that the trial court acted properly within the parameters of the statute when it then permitted the State to impeach the defendant with conflicting statements he had made during prior psychiatric examinations.

## IV

Defendant's final contention is that the prosecution's final arguments to the jury were inflammatory and improper. In addition to comments on the impeachment of the defendant with statements made during psychiatric examinations, statements which we have held were properly before the jury, the only other comment objected to by the defendant is one characterization of him as an "animal." We do not believe that this isolated comment could be said to have substantially prejudiced the jury or to have constituted a material factor in his conviction and accordingly we find no reversible error. *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881; *People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.

The judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.