(No. 61310.—
(No. 61342.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROLAND J. KASHNEY, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID LEE, Appellee.

*Opinion filed February 21, 1986.—Rehearing denied April 1, 1986.*

456

GOLDENHERSH and SIMON, JJ., concurring in part and dissenting in part.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago

(Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Thomas V. Gainer, Jr., and Richard A. Stevens, Assistant State's Attorneys, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Michael E. Shabat, Thomas V. Gainer, Jr., and Richard A. Stevens, Assistant State's Attorneys, of counsel), for the People.

Steven Clark and Patricia Unsinn, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

In cause No. 61310, defendant, Roland Kashney, was found guilty of the murder of Benjamin Peck by a jury in the circuit court of Cook County and was sentenced to a term of imprisonment of not less than 30 nor more than 60 years. Defendant appealed his conviction to the appellate court raising numerous errors at trial. Chief among these errors was a claim that the prosecution improperly used statements made by the defendant to court-appointed psychiatrists who examined him to determine his fitness for trial. The defendant argued that his statements were inadmissible because he had not presented the affirmative defense of insanity. The court found no error and noted that the defendant "[had] not present[ed] a classic insanity defense in the sense of admitting the commission of the acts charged but contending that he was insane when he committed them. But he

did present evidence suggesting to the jury that he was insane when he confessed to the crimes." (*People v. Kashney* (1984), 129 Ill. App. 3d 218, 224.) The court, in affirming the judgment of the trial court, held that the State could use defendant's statements made during his fitness examinations for purposes of impeachment. 129 Ill. App. 3d 218, 226.

In cause No. 61342, defendant, David Lee, was found guilty of rape by a jury in the circuit court of Cook County and was sentenced to a six-year term of imprisonment. Defendant appealed his conviction. As he had not raised the affirmative defense of insanity, defendant argued that the State should not have been permitted to introduce statements made during a court-ordered fitness examination for purposes of impeachment. The court agreed, reversing defendant's conviction and remanding the cause for a new trial. *People v. Lee* (1984), 128 Ill. App. 3d 774, 780.

Both appeals raise a common question arising under section 104—14(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—14(a)) and, therefore, have been consolidated by this court. We are asked to decide whether or not the State, consistent with section 104—14(a), may introduce statements made by a defendant during a court-ordered psychiatric examination for purposes of impeachment. Section 104—14(a) provides in relevant part:

> "Statements made by the defendant and information gathered in the course of any examination or treatment ordered under Section 104—13, 104—17 or 104—20 shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged or intoxicated condition, in which case they shall be admissible only on the issue of whether he was insane, drugged, or intoxicated. ***" Ill. Rev. Stat. 1981, ch. 38, par. 104—14(a).

The defendant in cause No. 61342 raises a second is-

sue. He asks that we find involuntary and, therefore, inadmissible certain incriminating statements he made after being told, deliberately but falsely, that his fingerprints had been found in the alleged victim's apartment.

The facts are set out at length in the respective appellate court opinions. Therefore, the facts related herein are limited to those necessary to decide the issues raised in these appeals.

In cause No. 61310 defendant Kashney was arrested, on the basis of an informant's tip, for the murder and armed robbery of Margaret Riggins and the murder and armed robbery of Benjamin Peck. Shortly after his arrest and after being advised of his *Miranda* rights, defendant signed a written statement confessing to both murders.

Prior to trial defendant moved to suppress his confession as given involuntarily, claiming that he had been hit on the head by an officer during questioning and that he was "afraid for his life." The trial court held a hearing on defendant's motion. The court expressed concern about defendant's allegation of being hit but found no corroboration of the incident. Further, the court cited unrefuted testimony by the assistant State's Attorney that he had spoken privately with the defendant prior to taking his written statement. The assistant State's Attorney directly asked the defendant whether or not he had been threatened or abused in any way. The defendant answered in the negative. The court ruled that defendant's confession was voluntary. At trial, defendant's confession constituted the principal evidence against him.

After the suppression hearing, at the request of defense counsel, the trial court ordered a psychiatric evaluation of the defendant. On the basis of the psychiatric report, the court entered an order in August 1977 finding the defendant unfit to stand trial and remanding

defendant to the Department of Mental Health until he should be found fit for trial. Between August 1977 and May 1980, additional psychiatric examinations were conducted. In May 1980, a full hearing as to defendant's fitness was held. At the conclusion of the hearing, the court found defendant fit to stand trial.

Defendant testified at trial in his own behalf and denied having murdered or robbed anyone. On both direct examination and cross-examination, he was asked to explain why he would confess to crimes he claimed not to have committed. He answered that he was coerced into confessing by demons which possessed one of the investigating officers at the time of his post-arrest questioning. Throughout trial, the defendant asserted his innocence at the time of the acts and repeatedly explained his confession by reference to the asserted demonic possession of one of the officers. In support of this explanation, the defense called two psychiatrists, both of whom had participated in defendant's court-ordered fitness examinations. Both psychiatrists testified that defendant was mentally ill between 1977, when he was remanded to the Department of Mental Health, and February 1980, just prior to his last fitness examination. No opinions were given as to the defendant's sanity or insanity at the time of the alleged offenses.

The defense also called two expert witnesses in demonology. One of the witnesses testified as to the possible existence of demons. The second expert testified that it was possible for a person to believe that another person is possessed by demons and, under such a belief, to respond with extreme fear.

The record indicates that while defense counsel steadfastly argued his client's position, he did not raise the defense of insanity during pretrial discovery or in pretrial motions. No instruction regarding defendant's insanity at the time of the acts charged was requested by

defense counsel, and no such instruction was given. Nor was a special verdict form for the verdict of not guilty by reason of insanity given to the jury. Further, during post-trial motions, no issue regarding defendant's insanity at the time of the alleged offenses was raised as grounds for post-trial relief.

The defendant argues that section 104—14(a) operates as an exclusionary provision prohibiting the use at trial of any statements he made during his court-ordered fitness examinations unless he raised the affirmative defense of insanity. Defendant argues that the explanation proffered for his false confession did not raise the affirmative defense of insanity. Therefore, defendant concludes that section 104—14(a) should be applied to bar the State from impeaching his psychiatric witnesses through the use of statements he made during his fitness examinations.

Whether or not the defendant raised the affirmative defense of insanity is not the dispositive issue in this case. The dispositive issue is whether or not the defendant can claim any protection under section 104—14(a) where he introduced the substance of statements he made during his fitness examinations. Defendant, during trial, waived whatever protection might be afforded by the provision in question by calling the court-appointed psychiatrists to testify in support of his claim that his confession was coerced by alleged demonic possession. Further, the record reveals that, on the State's objection to introduction of the psychiatric testimony, defense counsel agreed that the State would be able to cross-examine the witnesses as to their diagnoses of the defendant.

For these reasons we affirm the judgment of the appellate court in cause No. 61310.

In cause No. 61342 defendant Lee was arrested and charged with rape alleged to have occurred on November 14, 1981. During questioning, the defendant was told

that he had been identified by the complainant as her assailant. He denied having seen the complainant or having been in her apartment on the date of the alleged rape. As the questioning continued, the assistant State's Attorney falsely told the defendant that his fingerprints were found in the apartment. At that point, defendant admitted being in the complainant's apartment but claimed that he and the complainant had engaged in consensual sexual intercourse.

During the pretrial phase of the proceedings, defendant filed his answer to the State's request for discovery. Therein, the "[d]efendant state[d] that he did not commit the crime as charged and will rely on the State's inability to prove same beyond a reasonable doubt. Furthermore, the defendant may rely on the affirmative defense of insanity. (Post stress syndrome.)" The trial court ordered a psychiatric evaluation of the defendant with regard to his fitness to stand trial and his sanity at the time of the alleged offense. In June 1982, the psychiatric report was filed with the court which stated that the defendant was fit to stand trial and was sane at the time of the alleged offense.

The complainant testified for the State in its case in chief. She denied inviting the defendant to her apartment on November 14. She denied consenting to sexual intercourse with the defendant. She described the alleged rape and identified the defendant as her assailant. She also testified that her assailant was armed with what appeared to be a chrome-colored blade which he put to her throat.

The defendant called Dr. DeVito, his personal psychiatrist, who testified that the defendant suffered from a disorder known as post-traumatic stress syndrome. Dr. DeVito, after describing the disorder, testified that it is characterized by flashbacks to prior stressful experiences. He also testified that these flashbacks are trig-

gered by stressful events occurring in the present. He further testified that, during a flashback, the affected person could become verbally or physically abusive towards another. On cross-examination, Dr. DeVito testified that a flashback would not prevent the defendant from appreciating the criminality of his conduct nor would it prevent him from conforming his conduct to the requirements of the law.

The defendant then took the stand. He testified that he and the complainant had engaged in frequent consensual intercourse prior to the date of the alleged rape. He testified that he had telephoned the complainant on the night in question, asked to visit her, and that she agreed to see him. He testified that, after he arrived, he and the complainant went into her bedroom, undressed, and began to engage in consensual intercourse. Defendant testified that, during intercourse, he experienced a flashback to a brothel in Okinawa which he frequented during his military service, always seeing the same woman. The defendant continued, stating that, as a result of this flashback, the complainant became the woman from the brothel. He then began cursing the complainant and calling her names as he had done on one occasion to the woman from the brothel.

In rebuttal, over objection, the State called Dr. Grossman, the psychologist who had interviewed the defendant during his court-ordered fitness examination. The prosecutor elicited from Dr. Grossman statements made by the defendant during the interview. Dr. Grossman testified that defendant stated he was angry with the complainant; that "he thought he wanted to beat her up"; that "he had an ink pen and he thought that that would be a good weapon because no one could trace a pen." The witness further testified that defendant said he had heard a voice telling him to "'[g]et her, kill her, choke her, beat her.'"

During closing arguments, defense counsel reiterated that the defendant and the complainant had engaged in consensual intercourse, that the defendant experienced a flashback at which point he became verbally abusive. Defense counsel did not ask the trial court for an instruction as to the affirmative defense of insanity, and no such instruction was given.

The defendant argues that section 104—14(a) should be applied to bar the State from calling Dr. Grossman and eliciting statements defendant made to her. Defendant claims that his statements are admissible against him only to establish his sanity in the event the affirmative defense of insanity is raised. He maintains that his introduction of psychiatric testimony about flashbacks did not raise the affirmative defense of insanity. He concludes, therefore, that the State could not use his statements for purposes of impeachment.

The State counters by arguing that the defendant raised the affirmative defense of insanity by introducing expert testimony that he suffered from post-traumatic stress syndrome. Therefore, the State asserts the right, under the statute, to impeach defendant's psychiatric testimony through use of his prior inconsistent statements made during the course of the court-ordered fitness examination. We disagree.

Section 104—14(a) expressly provides for only one use of a defendant's statements made during a court-ordered fitness examination. A defendant's statements can be utilized by the State, but their use is limited to rebutting the affirmative defense of insanity. Therefore, we are asked to decide whether or not defendant's introduction of expert testimony as to post-traumatic stress syndrome constituted raising the affirmative defense of insanity for purposes of the statute. Insanity is raised as an affirmative defense when a defendant admits the offense charged but claims that, at the time of the offense, he

was insane and therefore lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).

The record in this case indicates that the defendant did not, during trial, raise the affirmative defense of insanity at the time of the act. He took the stand, denied raping the complainant, and claimed that the complainant had consented to intercourse. The defendant called his personal psychiatrist to explain why he might verbally abuse the complainant during what he claimed was consensual intercourse and why, as a result, the complainant might accuse him of rape. Moreover, on cross-examination of the defendant's expert, the State established that the defendant was not legally insane at the time of the offense charged.

It is undisputed that the defendant made the contested statements during a court-ordered fitness examination. Because we find that the defendant did not raise the affirmative defense of insanity, the State was barred by the exclusionary language of section 104—14(a) from calling the court-appointed psychologist and eliciting from her statements made by the defendant during the examination.

The defendant raises a second issue. He argues that any incriminating statements given during his initial questioning were involuntary because they were elicited as a result of a deliberate misrepresentation by the assistant State's Attorney. The claimed misrepresentation concerned a statement by the State's Attorney that the defendant's fingerprints "were found all over the apartment." Prior to this comment, the defendant had denied being in the complainant's apartment and, to that point, had not given any inculpatory statements. After the comment, the defendant admitted being in the apartment and then proceeded to give his account of the events on the night in question.

An examination of the record reveals that the defendant voluntarily presented himself to the police after learning that he was being sought for questioning. He was not restrained in any way during questioning. His questioning continued from 8 p.m. until past midnight. While defendant claimed to be afraid during questioning, he has not alleged, and the record contains no indication, that he was threatened, intimidated, or physically mistreated. Further, the defendant continued to participate in the questioning after being given his *Miranda* rights and affirmatively waiving those rights in writing. The record reveals that defendant is literate and educated, has an intelligence quotient of 110, and holds a position as a computer programmer. Defendant, therefore, appeared capable of understanding both his *Miranda* rights and the implications of waiving those rights.

This court's recent decision in *People v. Martin* (1984), 102 Ill. 2d 412, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334, is dispositive on this issue. There, both the police and the State's Attorney knowingly and falsely told the defendant that his codefendant had named him as the "triggerman" in a homicide. The defendant then made incriminating statements. This court found, under the totality of the circumstances, that defendant's incriminating statements were given freely, voluntarily, and without any coercion overbearing his will despite the deliberate and false misrepresentation. 102 Ill. 2d 412, 427.

*Martin* holds that inculpatory statements which are voluntary are not necessarily vitiated by misrepresentations by authorities. A misrepresentation which prompts inculpatory statements is only one factor to be considered in determining the voluntariness of the resulting statements. Other factors must be considered as well, such as, the "age, education and intelligence of the accused, the duration of questioning, and whether he re-

ceived his constitutional rights or was subjected to any physical punishment." (102 Ill. 2d 412, 427.) On the record before us, we find no indication that defendant's will was overborne such that any inculpatory statements were involuntary.

In cause No. 61342, although we disagree with that portion of the appellate court's opinion which found defendant's inculpatory statements to the assistant State's Attorney involuntary and inadmissible, we nevertheless affirm the appellate court's judgment reversing defendant's conviction on the grounds that the State improperly introduced certain statements made by defendant which are subject to a statutory exclusion. The cause is remanded to the circuit court of Cook County for a new trial consistent with this opinion.

*61310 — Judgment affirmed.*
*61342 — Affirmed and remanded,*
*with directions.*

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

For the reasons stated in the dissenting opinion in *People v. Martin* (1984), 102 Ill. 2d 412, I disagree with that portion of the majority opinion which approves the deceptive practice employed in obtaining defendant Lee's incriminating statement. To so hold violates the pronouncement in *Miranda v. Arizona* (1966), 384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629:

"[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver [of the fifth amendment privilege against self-incrimination] will, of course, show that the defendant did not voluntarily waive his privilege."

JUSTICE SIMON joins in this partial concurrence and partial dissent.