NOTICE

Decision filed 03/17/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180371-U

NO. 5-18-0371

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 16-CF-55 |
| | ) | |
| KEVIN A. JOHNSON, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's motion to suppress or considering the psychological impact of defendant's actions in sentencing defendant. Defense counsel did not provide ineffective assistance of counsel for failing to admit videotaped police interviews at the suppression hearing where the recordings did not provide support for defendant's contentions of involuntariness.

¶ 2    Defendant appeals from his convictions for criminal sexual assault and aggravated criminal sexual abuse, as well as his sentence of 34 years' imprisonment. He contends the court erred in denying defendant's motion to suppress admissions given during police interviews and considering the psychological impact of defendant's actions when sentencing defendant. For the following reasons, we affirm.

1

¶ 3                    I. BACKGROUND

¶ 4     Defendant, Kevin A. Johnson, was convicted of three counts of criminal sexual assault for performing cunnilingus upon A.G., who was a family member under 18 years of age, in violation of section 11-1.20(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.20(a)(3) (West 2016)), and two counts of aggravated criminal sexual abuse for having A.G., a family member who was under 18 years of age, fondle his penis for the purpose of sexual gratification or arousal in violation of section 11-1.60(b) of the Code (*id.* § 11-1.60(b)). Defendant was appointed counsel, Nathan Rowland. However, the court subsequently allowed defendant to waive his right to counsel and proceed *pro se*.

¶ 5     On August 19, 2016, the State filed a motion *in limine*, requesting to bar defendant from playing his videotaped interviews with police at trial. The State argued that defendant's exculpatory, self-serving statements contained on the videotapes would be inadmissible hearsay if played as substantive evidence because defendant could avoid taking the stand and being subject to cross-examination. It further alleged that no other hearsay exception applied that would allow it to be introduced. The court granted the State's motion.

¶ 6     Although the State requested the videotapes not be played, the State disclosed its intent to use defendant's inculpatory statements as substantive evidence. On August 23, 2016, defendant filed several *pro se* motions. In those motions, he requested that, *inter alia*, the suppression of the interviews on the basis that his interview was coerced by Agent Colp and that he was a paranoid schizophrenic coming off his psychotropic medication. Defendant filed another *pro se* motion to suppress on August 31, 2016, alleging that Agent

2

Colp coerced a confession by telling defendant that a warrant would be issued for his arrest if he did not come back on January 28, 2016, for a polygraph test and second interview. The motion also noted that defendant started a new medication on January 28, 2016.

¶ 7 On October 5, 2016, the court appointed defendant counsel, Tammi Jackson, because it thought defendant could not properly represent himself. Jackson withdrew as counsel and the court appointed Amanda Moore (trial counsel). Moore represented defendant for the remainder of the pretrial proceedings, at the bench trial, and at sentencing.

¶ 8 On September 29, 2017, defense counsel filed a motion to suppress the videotaped interviews, arguing defendant's statements were not voluntary. The motion alleged that Agent Colp made repeated requests to interview defendant, to which defendant declined, and threatened defendant by stating he "would never see the light of day" if he did not do the interview, coerced defendant into making confessions by telling defendant that Agent Colp would try to get him out of jail if he cooperated, and manipulated defendant into confessing by agreeing with defendant that this was not all his fault.

¶ 9 At the hearing on the motion to suppress, Agent Colp and defendant testified. Agent Colp testified that he interviewed defendant on January 15, 2016, after the Department of Children and Family Services contacted the police department regarding allegations of sexual abuse by defendant to a four-year-old, S.G., who was A.G.'s sister. The interview took place at the Saline County Sheriff's Office. During the interview, defendant told Agent Colp that, on three occasions, A.G. took his hand and rubbed her vagina with his hand on the outside of the clothing. Defendant agreed to submit to a polygraph examination, and it was scheduled for January 28, 2016. After the interview concluded,

3

defendant was told he was free to leave and he left. Agent Colp stated that he did not contact defendant anytime between January 15 and 28 of 2016.

¶ 10    Agent Colp stated he encountered defendant again on January 28, 2016, at Saline County Sheriff's Office, where defendant was in custody on an unrelated matter. At the conclusion of defendant's polygraph exam, the polygraph examiner advised Agent Colp that defendant did not pass the exam and was willing to talk with him. Agent Colp verified with defendant that defendant was willing to talk with Agent Colp.

¶ 11    Agent Colp stated that he never asked defendant whether he was competent or under the influence of any medication. He testified that—at that time—defendant did not appear under the influence of any medication or narcotics, and he was not informed of any kind of medication that defendant may have taken. Agent Colp clarified that asking whether a defendant was under the influence would not necessarily be a part of his questioning especially when a defendant was in custody in the jail at that time. He also denied making a promise that defendant could meet with State's Attorney Mike Henshaw if he cooperated.

¶ 12    Agent Colp testified that he never—in either interview—stated that defendant "would never see the light of day" if he did not cooperate, made threats of violence, or came into physical contact with defendant. He further averred that he did not promise defendant that he would get defendant out of jail if defendant cooperated. Agent Colp denied making any promises on January 15, 2016, or January 28, 2016, that would induce defendant into signing away defendant's rights or speaking involuntarily.

¶ 13    Agent Colp stated, "I used tactics such as that it's not a big deal, that it wasn't your fault, that she had come on to you, things of that nature, to make him feel more comfortable

4

in admitting the truth." He learned those tactics at the Reid school, Illinois State Police Basic Investigator's Course, and a 40-hour death investigation certification class. Agent Colp averred that such tactics are commonly used in law enforcement and accepted across the nation as approved forms of interview techniques. He testified that he did not make promises in using those tactics and that defendant did not give any indication that he did not wish to speak with Agent Colp.

¶ 14 Before each interview began, Agent Colp read defendant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). He did not, however, ask defendant if he could read English or have defendant read the form out loud. Defendant then signed the standardized form that indicated he understood and waived his rights. Agent Colp testified that he did not coerce or make any promises to get defendant to sign either waiver form, and defendant signed both forms voluntarily.

¶ 15 On recall, Agent Colp stated that he did not tell defendant that he would set up an interview with State's Attorney Henshaw in either interview. Agent Colp also testified that he never threatened defendant by stating he would not see the light of day and that defendant never informed him of taking any medication.

¶ 16 Defendant testified that he was 41 years old, completed high school, and knew how to read and write in English. He stated that after speaking to Agent Colp on January 15, 2016, Agent Colp threatened defendant by saying he would have a warrant out for his arrest if he did not come back. Defendant admitted he made incriminating statements on January 28, 2016, during his second interview with Agent Colp.

¶ 17    Defendant was arrested on January 18, 2016, on an unrelated matter. Prior to January 28, 2016, defendant had never been arrested or had a previous criminal history and was not aware of his rights. Defendant stated—at the time of his arrest—he was addicted to Oxycontin and Xanax.

¶ 18    He averred he was in observation for seven to eight days in a small jail cell that had no TV or bathroom because he tried to hurt himself. However, defendant did not personally remember trying to hurt himself, as he was coming off Oxycontin and Xanax and did not understand what was going on around him. During this time, the jail provided food, but he was not eating. He stated while in observation on January 26, 2016, Agent Colp sent a correctional officer to threaten defendant by saying defendant would never see the light of day if he did not take a polygraph examination, after defendant already declined to do so.

¶ 19    Defendant testified that his withdrawal from Oxycontin and Xanax impacted his ability to understand the interview with Agent Colp, and, but for the withdrawal, he would have refused to answer Agent Colp's questions. Defendant also stated that the jail started him on Prozac the morning of his interview, and he informed the correctional officer, polygraph examiner, and Agent Colp as such. He felt the Prozac made him "more loopy." Defendant averred that Agent Colp used techniques—such as telling defendant it was not his fault—that made him feel like what he said was not truthful. Agent Colp also told defendant that if he cooperated and provided the information needed, defendant could speak with State's Attorney Henshaw. According to defendant, this promise was the reason he told Agent Colp what he wanted to hear. Defendant never met with State's Attorney

Henshaw. Defendant concluded that he did not believe the statements made on January 28, 2016, were voluntary.

¶ 20　On cross-examination, defendant stated that he remembered being read his rights on January 15, 2016, but did not remember Agent Colp reading them on January 28, 2016. However, defendant admitted that he signed both waiver forms. Defendant also testified that he did not take any Oxycontin or Xanax between his arrest on January 18, 2016, and his second interview on January 28, 2016.

¶ 21　The court found that defendant's will was not overborne and that his statements—in both interviews—"were the product of the defendant's rational intellect and free will." The court further found the statements were made voluntarily, knowingly, and intelligently without compulsion or unlawful inducement. Accordingly, the court denied the motion to suppress.

¶ 22　Defendant was found guilty of all counts on October 2, 2017. The convictions subjected defendant to a possible 4 to 15 years' imprisonment for each count of criminal sexual assault (counts I, II, and III) and 3 to 7 years' imprisonment for each count of aggravated criminal sexual abuse (counts IV and V).

¶ 23　At the sentencing hearing, the court admitted victim impact statements from A.G. and A.G.'s mother, Rose Deblase. Both read their statements at the hearing.

¶ 24　Rose averred that in addition to the abuse to A.G., defendant abused her son St. G. but was not charged. She explained that after St. G. witnessed defendant abusing A.G., defendant would drug St. G. with sleeping pills. She had to sleep with her son for over year due to his fear of defendant hurting him. Her son also told her that defendant tried to kill

him more than once, but he did not provide details. Her son, who was only eight years old, attempted suicide over the matter and was admitted to the hospital for 14 days. Now, her son had to take medications.

¶ 25    With respect to A.G., Rose stated that defendant stole her innocence and made her grow up too fast. A.G. did not understand how someone who wanted to be her father could do something like this. Rose believed A.G.'s life would never be the same thanks to defendant. Rose averred that A.G. also attempted suicide, which put her in the intensive care unit in the hospital and then the psychiatric unit for 10 days. A.G. also cut herself for months before her attempted suicide.

¶ 26    Rose also stated that defendant ripped her world apart, because only one of her four children live with her. A.G., St. G., and S.G. now live with guardians because they feel like she cannot protect them. Rose contended defendant abused her trust, and as a result, she tried to take her own life twice. Rose stated that she cried almost daily for the past two years, became depressed, and must now take medication. She did not believe her heart would ever be whole again.

¶ 27    A.G. also read her victim impact statement. She stated that defendant stuck his hands down her pants the first time when defendant dated her sister's grandmother in 2013. Soon after, defendant got into a relationship with her mother. After about a year, defendant would attempt to get close to her and eventually talked her into having sex with him. A.G. cried about it but did not tell anyone because she wanted her mom to be happy. After that first time, defendant made having sex a habit. While they lived in Raleigh, the sex would continue anytime defendant could get her alone. This lasted for almost three months until

defendant went to jail. A.G. said defendant going to jail made her happy because he could never hurt her again, but she was unhappy that people found out about defendant abusing her. At first, she did not believe the police when they told her it was not her fault because she felt guilty for letting defendant talk her into the sexual abuse.

¶ 28 A.G. stated that she became depressed, and had anxiety, and suicidal thoughts. She got so overwhelmed that she started to self-harm. She began to "not care" and her grades suffered. A.G. averred after the trial was postponed for the seventh time, she tried to commit suicide. She was in the ICU for a week and then the behavioral unit for almost two weeks. A.G. stated that she developed a lot of fears and would wake up crying every night. Defendant also changed her relationship between her and her mom because she fostered hate towards her mom for not protecting her.

¶ 29 The State argued that defendant's conduct caused or threatened serious harm to A.G. 730 ILCS 5/5-5-3.2(a)(1) (West 2016). It explained that his actions need not cause physical harm and, here, the actions caused mental harm. The State argued defendant had not only stolen A.G.'s innocence and self-esteem but also her family, as she now lived with guardians because she felt her mother could not protect her. The State also contended that section 5-5-3.2(a)(7) of the Unified Code of Corrections (Unified Code), the necessity in deterring other from committing the same crime, supported a lengthy sentence. *Id.* § 5-5-3.2(a)(7). Accordingly, the State requested a 15-year term of imprisonment for each count of criminal sexual assault to be served consecutively, and a 6-year term for both counts of aggravated criminal sexual abuse also to run consecutively, for a total of 57 years' imprisonment.

¶ 30   Defense counsel argued the defendant's action neither caused nor threatened serious physical harm to another. *Id.* § 5-5-3.1(a)(1). He also contended section 5-5-3.1(a)(7) of the Unified Code favored mitigation because—to date—defendant had only a conviction for a traffic citation. *Id.* § 5-5-3.1(a)(7). Accordingly, defense counsel requested the minimum of four years' imprisonment on counts I, II, and III, and the minimum of three years' imprisonment for counts IV and V, to be served concurrently.

¶ 31   After considering the victim impact statements, the parties' arguments, and the factors in aggravation and mitigation, the court sentenced defendant to a total of 34 years' imprisonment. It imposed 10 years' imprisonment for each count of criminal sexual assault as charged and found in counts I, II, and II, each to be served consecutively. The court further sentenced defendant to four years' imprisonment for each count of aggravated criminal sexual abuse as set forth in counts IV and V with the sentence for count IV to be served consecutively with each sentence imposed for counts I, II, and III, but served concurrently with the sentence imposed as to count V.

¶ 32   On November 3, 2017, defendant filed a document with the court that contended counsel was inadequate and deprived him of a fair trial. Defendant alleged that his attorney failed to keep him informed. Attached to the document was another document that provided further information. Defendant asserted that previous counsel, Nathan Rowland, failed to contact the jail nurse to testify that defendant was off his medication and not competent to waive his rights, and that defendant needed rehabilitation for his addiction to meth, Oxycontin, and Xanax. Defendant also contended that counsel failed to obtain a video of

Agent Colp threatening defendant to have a second interview on January 28, 2016, and evidence proving that he was not a family member.

¶ 33 With respect to Amanda Moore, defendant asserted that she failed to obtain evidence that defendant was not a family member. Defendant also claimed counsel failed to obtain jail records "proving [defendant] was in observation and not compident [*sic*] to sign [his] rights away or give [an] interview," or to call witnesses that defendant told her call.

¶ 34 The court denied defendant's *pro se* claims. On January 10, 2018, the court granted a substitution of attorneys and appointed Allen Roe (posttrial counsel).

¶ 35 On February 9, 2018, posttrial counsel filed a motion for a new trial, alleging, *inter alia*, that the court erred in admitting defendant's admissions to Agent Colp because they were involuntarily made. At the hearing, posttrial counsel argued that while defendant was told he was free to leave during his January 15, 2016, interview, he had no experience with the criminal justice system and did not know that he could refuse questioning and leave at that time. Posttrial counsel also contended that Agent Colp's threat of defendant "never seeing the light of day" if he did not come to a second interview made defendant's subsequent admission involuntary. Further, posttrial counsel asserted that defendant was suffering from withdrawals from his substance dependency and started a new prescription on the date of the interview. As such, counsel argued that defendant was in no condition physically or mentally to consent to an interview. After a hearing on the matter, the court denied the motion.

¶ 36 Late notice of appeal was allowed on August 2, 2018. This court also allowed defendant to supplement the record with the videotapes of his interviews, pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017). See *Nameoki Township v. Cruse*, 155 Ill. App. 3d 889, 895 (1987).

¶ 37                                    II. ANALYSIS

¶ 38 On appeal, defendant argues (1) the court erred in denying his motion to suppress, (2) trial counsel provided ineffective assistance for failing to admit the videotaped interviews in arguing the motion to suppress, and (3) the court improperly considered a factor inherent in the offense when it sentenced defendant.

¶ 39                              A. Motion to Suppress

¶ 40 On appeal, defendant argues the court erred in failing to suppress statements made during his second interview on January 28, 2016. A ruling on a motion to suppress is subject to a mixed standard of review. *People v. Woods*, 2019 IL App (5th) 180336, ¶ 27. We give great deference to the trial court's findings of fact and review its factual findings to determine whether they are against the manifest weight of the evidence. *Id.* Nevertheless, we review the trial court's ultimate legal ruling as to whether suppression is warranted *de novo*. *Id.*

¶ 41 Under the fifth amendment of the United States Constitution, which applies to the states through the fourteenth amendment (*People v. Hunt*, 2012 IL 111089, ¶ 23), "[n]o person shall *** be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. As such, a defendant's statements or confession obtained during interrogation must be voluntary; otherwise, it is inadmissible. *People v. Sanders*, 2021 IL

App (5th) 180339, ¶ 41. The State bears the burden to show that the statements were voluntary by a preponderance of the evidence. *People v. Richardson*, 234 Ill. 2d 233, 254 (2009).

¶ 42 To determine the voluntariness of a statement, courts consider the totality of the circumstances, "including the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of *Miranda* warnings; the presence of any physical or mental abuse; and the legality and duration of the detention." *People v. Welch*, 365 Ill. App. 3d 978, 985-86 (2005). "No single factor is dispositive, rather [t]he test of voluntariness is whether the individual made his confession freely and voluntarily, without compulsion or inducement of any kind, or whether the individual's will was overborne at the time of the confession." (Internal quotation marks omitted.) *People v. Murdock*, 2012 IL 112362, ¶ 30.

¶ 43 In arguing the State could not have met its burden to prove that defendant's confession was the product of free will, defendant contends that circumstances changed dramatically between his first and second interview. He asserts during his second interview he was withdrawing from Oxycontin and Xanax and had just started Prozac, which made him "more loopy." He notes that he had attempted to harm himself and was being held in observation. He also states that immediately before his second interview, he was informed of failing his polygraph test and—due to his lack of prior experience with law enforcement—did not understand that such exam could not be used against him. Defendant argues that his testimony to these facts was not refuted where Agent Colp admitted that he did not inquire as to whether defendant had slept, eaten, or been taking any medications or

13

narcotics in the jail, or if defendant had any physical, mental, or emotional issues. According to defendant, these facts in conjunction with Agent Colp's interrogation tactics rendered defendant's statements involuntary. We disagree.

¶ 44 Police deception, drug ingestion prior to interrogation, or knowledge of failing a polygraph exam do not automatically render an admission involuntary. *People v. Kashney*, 111 Ill. 2d 454, 466 (1986); *People v. Kincaid*, 87 Ill. App. 3d 552, 556 (1980); *People v. Higgins*, 239 Ill. App. 3d 260, 272 (1993). Rather, they are factors to be considered. *Kashney*, 111 Ill. 2d at 466; *Kincaid*, 87 Ill. App. 3d at 556; *Higgins*, 239 Ill. App. 3d at 272. The pivotal question remains to be whether defendant's " 'will was overborne at the time the confession was made.' " *People v. Simpson*, 129 Ill. App. 3d 822, 832 (1984) (quoting *People v. Kincaid*, 87 Ill. 2d 107, 119 (1981)).

¶ 45 In light of the circumstances of this case and Illinois precedent, we find the interrogation techniques here did not render the confession involuntary. In *People v. Valle*, defendant—who was 18 years old and had never been arrested—confessed to a shooting after two interviews with police officers. *People v. Valle*, 405 Ill. App. 3d 46, 49-53 (2010). Over the course of the interviews, an officer told defendant that there was a recording in which defendant could be heard admitting to the shooting of the victim, which was untrue. *Id.* at 48. The officer also falsely told the defendant that the victim was an FBI informant. *Id.* Officers further deemphasized defendant's potential criminal liability by stating that the shooting might have been excusable, such as self-defense or that the shooting was an accident. *Id.* at 49-50. The appellate court affirmed the trial court's admission of the confessions. *Id.* at 61. It held that the degree of aggression and deception did not result in

14

an involuntary confession where defendant was not particularly susceptible to the police tactics. *Id.* In making this conclusion, the *Valle* court relied on two Illinois Supreme Court cases, *People v. Martin*, 102 Ill. 2d 412, 417-18 (1984), and *People v. Kashney*, 111 Ill. 2d 454, 462 (1986). *Id.* at 59.

¶ 46    In *Martin*, defendant made incriminating statements after the police and state's attorney knowingly and falsely told defendant that his codefendant named him as the shooter in a homicide. *Martin*, 102 Ill. 2d at 416-17. The supreme court found the statements were voluntarily given where police provided *Miranda* warnings, and although not a high school graduate, defendant was literate and understood his constitutional rights. *Id.* at 427. The court also reasoned that the interrogation was not lengthy, and defendant was not subjected to physical abuse or threatened. *Id.*

¶ 47    In *Kashney*, defendant was charged with a rape and admitted to being in the victim's apartment and engaging in consensual sex after an officer falsely told defendant that his fingerprints were found in the apartment. *Kashney*, 111 Ill. 2d at 461-62. The supreme court found defendant's statements were voluntary despite the misrepresentation based on facts of that case, including that defendant was a literate and educated man who was subjected to a four-hour interview in which there was no indication of threatening behavior or mistreatment. *Id.* at 466-67.

¶ 48    The police tactics in this case were much less severe than the blatant deception involved in the above authority. Agent Colp did not deceive or make falsities. Rather, Agent Colp testified he only minimized the severity of defendant's culpability. Defendant's failure to realize the criminal liability of his actions is insufficient to find the admissions

15

were involuntary. *Martin*, 102 Ill. 2d at 427; *People v. Henderson*, 37 Ill. 2d 489, 492 (1967).

¶ 49 Moreover, there is no indication that defendant had a special susceptibility to the police tactics here. Defendant was a 40-year-old man with a high school education. Before each interview, defendant signed a waiver form after being read his *Miranda* rights.

¶ 50 Unlike the above cases, there were allegations of threats and promises here, but Agent Colp dispelled every allegation of a threat, coercion, or promise in his testimony. Agent Colp also contradicted defendant's conclusion that Prozac affected his ability to understand his rights and the interrogation by testifying that defendant did not appear under the influence of any medication or drug. Defendant further undermined the severity of any allegation of suffering from withdrawal symptoms at the time of the second interview by conceding that it had been 10 days since he last took those medications.

¶ 51 Because the trial court is in the position to observe the conduct and demeanor of the parties, we will not substitute our judgment for the trial court's when the evidence is conflicting and subject to different interpretations. *In re Shutters*, 56 Ill. App. 3d 184, 188 (1977). Matters of credibility and findings of fact are best resolved by the trial court. *Richardson*, 234 Ill. 2d at 265. In light of Agent Colp's testimony to the contrary, the trial court was not required to accept defendant's contention that his admissions were the product of intoxication, threat, or promises. *People v. Govea*, 299 Ill. App. 3d 76, 88 (1998).

¶ 52 We further find that defendant's argument that being informed of his failed polygraph test coerced him into confessing does not require reversal. There was no

16

evidence presented at the suppression hearing that anyone informed defendant of the exam results. Agent Colp testified that the examiner informed him that defendant failed, but neither Agent Colp nor defendant testified that defendant was aware of the results. Nevertheless, we note that given that defendant was literate and had no particular suggestibility, we fail to see how the failure of a polygraph exam—that defendant voluntarily agreed to take—coerced him or overbore his will to subsequently make inculpatory admissions to Agent Colp. See *People v. Thomas*, 137 Ill. 2d 500, 516 (1990); *People v. Taylor*, 58 Ill. 2d 69, 75-77 (1974).

¶ 53    Accordingly, on this record, we find police did not overbore defendant's will such that his admission was involuntary. The court's denial of defendant's motion to suppress was therefore proper.

¶ 54                    B. Ineffective Assistance of Counsel Claim

¶ 55    Defendant also argues trial counsel was ineffective for failing to introduce and admit into evidence his videotaped interviews at the suppression hearing and, as a result, failed to provide meaningful support for the defense's theory that defendant's statements were involuntary. He contends the inability to review the two videotaped interviews was significant because the trial court could not observe, compare, and analyze defendant's physical and mental conditions during the interviews. Also, without reviewing the recordings, the trial court could not compare how defendant appeared in the recordings to his in-court testimony. Defendant asserts how he appeared, sounded, and reacted were essential to trial counsel's defense theory on the motion to suppress—that defendant was

17

mentally incompetent to waive his *Miranda* rights and that Agent Colp coerced, threatened, and made promises that overbore defendant's will.

¶ 56    A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504 (1984) (Illinois Supreme Court adopting the *Strickland* standard). To prevail, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. Because we find defendant failed to prove prejudice, we need not determine whether counsel's performance was unreasonable. *Strickland*, 466 U.S. at 697.

¶ 57    Defendant seemingly contends that the failure to present the recordings to the court at the suppression hearing establishes prejudice itself because the court could not review them in making its determination on the motion to suppress. Defendant, however, is mistaken. To prove prejudice in the context of a motion to suppress, "defendant must show that a reasonable probability exists that both *the motion would have been granted* and that the trial outcome would have been different had the evidence been suppressed." (Emphasis added.) *People v. Orange*, 168 Ill. 2d 138, 153 (1995). If the videotaped interviews fail to give support for defendant's contentions at the suppression hearing, the admission of the recordings would not have changed the outcome of the suppression hearing. Rather, to establish prejudice, the videotaped interviews must provide convincing support for defendant's contentions such that the motion to suppress would have been granted.

18

¶ 58   Defendant fails to specify the portion of the videotaped interviews that supports his position. However, he contends the videotaped interviews would have changed the outcome of the suppression hearing because they show his physical and mental state during the interviews.

¶ 59   After reviewing the videotaped interviews, we find they do not provide further support to defendant's contentions of coercion and involuntariness. On the recordings, defendant appears coherent and able to intelligently communicate with Agent Colp. While visibly remorseful and hesitant to answer at times, there is no indication that defendant suffered from withdrawal or mental impairment. There is also no evidence of physical impairment or abuse. Nothing on the recordings suggests Agent Colp coerced or induced defendant's statements through a promise to meet with State's Attorney Henshaw or some other inappropriate promise. Although the recordings show Agent Colp used techniques where he downplayed defendant's fault in engaging sexually with A.G., Agent Colp admitted as such at the motion to suppress hearing.

¶ 60   Moreover, the recordings show several factors in favor of finding voluntary admissions. For example, each interview was less than an hour. Also, despite defendant's contentions of drug withdrawal, a comparison of the first and second recordings shows defendant's demeanor and actions are substantially similar.

¶ 61   The recordings simply did not provide any further support for defendant's contentions such that the outcome of the suppression hearing would have been different. Accordingly, defendant cannot establish prejudice and his ineffective assistance of counsel claim therefore must fail.

19

¶ 62                                C. Sentencing Error

¶ 63    Defendant lastly argues that the court erred in considering mental harm when imposing a 34-year term of imprisonment, because it is presumed that the legislature took psychological harm into account when creating and defining the charged offenses. He contends that the record demonstrates that the court considered mental harm in imposing the sentence because it explicitly noted when it was not going to consider an aggravating factor argued by the State. Defendant concedes he failed to preserve this issue but requests plain error review. Under a plain error analysis, we must first determine whether an error occurred. *People v. Hileman*, 2020 IL App (5th) 170481, ¶ 47. For the following reasons, we find the court did not err in considering the psychological impact of defendant's actions when imposing a sentence.

¶ 64    "[A] single factor cannot be used both as an element of the offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." (Internal quotation marks omitted.) *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). Because we presume the legislature necessarily considered the factors inherent in an offense when designating the sentencing range for the offense, courts cannot use a factor implicit in the offense also as an aggravating factor in sentencing. *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). Such use of a single factor constitutes impermissible "double enhancement." *Id.*

¶ 65    Generally, when a sentence falls within the statutorily prescribed range, a trial court's sentence is entitled to great deference and will be overturned only for an abuse of discretion. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. However, *de novo* review

is appropriate when determining whether a court improperly relied upon a factor implicit in the offense when imposing the sentence. *Phelps*, 211 Ill. 2d at 12.

¶ 66   In support of defendant's contention that the psychological harm caused by his actions was implicit in the offenses for which he was convicted, defendant cites to *People v. Calva*, 256 Ill. App. 3d 865, 875-77 (1993), and *People v. Huddleston*, 212 Ill. 2d 107, 133-47 (2004). We find no support in these cases for his position.

¶ 67   In *Huddleston*, the Illinois Supreme Court determined whether the statutorily imposed mandatory life sentence when a defendant is convicted of criminal sexual assault against two or more children was unconstitutional as applied to defendant. *Huddleston*, 212 Ill. 2d at 110-11. In doing so, the court acknowledged the psychological damage to children that results from sexual crimes committed against them. *Id.* at 134-36. The court, however, did not address whether such psychological harm was an inappropriate factor in sentencing a defendant who committed a sexual offense against a child.

¶ 68   Similarly, the First District in *Calva* did not determine that trial courts could never consider psychological harm in sentencing defendant for sexual offenses against children. Rather, the First District specifically found that the court could not infer psychological harm beyond that inherent in the offense where no evidence was presented to show psychological harm to the victim. *Calva*, 256 Ill. App. 3d at 875.

¶ 69   Many courts, including this court, have found that the psychological harm endured by a child victim as a result of the sexual offense is an appropriate factor to consider when sentencing a defendant. *Bunning*, 2018 IL App (5th) 150114, ¶ 18 (collecting cases); *People v. Burton*, 102 Ill. App. 3d 148, 154 (1981) (psychological harm was an appropriate

21

factor to consider in sentencing defendant for a sex offense because, although the victims did not testify, the court observed the victims); *People v. Nevitt*, 228 Ill. App. 3d 888, 892 (1992) ("The psychological harm inflicted on a young victim of a sexual crime has been held to be a proper consideration."). In *Bunning*, this court found *Calva* distinguishable and that the sentencing court properly considered psychological harm in sentencing defendant for aggravated criminal sexual abuse where there was evidence of the specific psychological harm to the victim. *Bunning*, 2018 IL App (5th) 150114, ¶¶ 21-22. We reasoned that the sentencing court observed the victim through her testimony and could rely upon the victim impact statement of victim's mother that spoke of the victim's experience with psychological treatments and her concern that the victim was not who she used to be. *Id.* ¶ 21.

¶ 70 Here, the State presented evidence of A.G.'s psychological harm. The court observed A.G.'s testimony regarding defendant's abuse. A.G.—as well as her mother— submitted victim impact statements that revealed the psychological impact of defendant's actions. A.G. testified to self-harm, attempted suicide, necessity of psychological treatment, and continued distrust of others. We find the record supports a finding—or at least a reasonable inference—of harm, similar to *Bunning*. See *id.* ¶¶ 21-22. Accordingly, the court did not err in considering psychological harm as an aggravating factor in sentencing.

¶ 71                                    III. CONCLUSION

¶ 72 The trial court did not err in denying defendant's motion to suppress his admissions. Because the videotaped interviews failed to support defendant's contentions at the

22

suppression hearing, counsel was not ineffective for failing to admit the recordings for the court's review. Also, the court properly considered psychological harm as a factor in sentencing defendant where the record contains evidence of the psychological impact of defendant's actions. Accordingly, we affirm the conviction and sentence.

¶ 73    Affirmed.